ELLIOTT v. *KB HOME N.C., INC.*

[231 N.C. App. 332 (2013)]

MARK ELLIOTT, TOR AND MICHELLE GABRIELSON, MICHIHIRO AND YOKO
KASHIMA, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS
v.
KB HOME NORTH CAROLINA, INC. AND KB HOME RALEIGH-DURHAM, INC.,
DEFENDANTS, AND KB HOME RALEIGH-DURHAM, INC., THIRD-PARTY PLAINTIFF
v.
STOCK BUILDING SUPPLY, LLC, THIRD-PARTY DEFENDANT

No. COA13-352

Filed 17 December 2013

1. **Appeal and Error—interlocutory orders and appeals—denial of arbitration—substantial right**

   An order denying arbitration is immediately appealable because it involves a substantial right which might be lost if appeal is delayed.

2. **Arbitration and Mediation—waiver—federal act inapplicable in state court**

   The trial court did not err by failing to determine, prior to deciding the issue of waiver, whether the Federal Arbitration Act (FAA) or the North Carolina Revised Uniform Arbitration Act controlled. Section 3 of the FAA only applies in federal district court, not in state court.

3. **Arbitration and Mediation—waiver—inconsistency—asserting right to arbitrate**

   The trial court did not err by determining that that defendant's actions were inconsistent with its right to arbitration, and thus, constituted waiver with respect to plaintiffs. Competent evidence supported the trial court's findings that defendant, over more than a three-year period in which it participated in the litigation of this action, did nothing to assert any right to arbitrate. Further, the approximately $100,000.00 in fees incurred by plaintiffs in litigating the claims constituted significant expenditures of time and expenses.

4. **Arbitration and Mediation—waiver—unnamed class members**

   The trial court did not err by ruling that defendant had waived any right to arbitrate with respect to the unnamed class members. More than three years and four months passed between the initiation of this class action and defendant's motion to compel arbitration. Defendant litigated this case that entire time while sitting on any contractual rights it had to arbitrate. Further, plaintiffs and their attorneys invested significant amounts of time

**ELLIOTT v. KB HOME N.C., INC.**

[231 N.C. App. 332 (2013)]

and sums of money prosecuting this case on behalf of themselves
and the purported class.

**5.  Arbitration and Mediation—waiver—obligation to arbitrate**

The trial court did not err by failing to rule on Stock's obligation
to arbitrate. Having held that the trial court did not err in ruling that
defendant had waived its rights in this regard, defendant's argument
concerning Stock necessarily failed.

Appeal by Defendant KB Home Raleigh-Durham, Inc. from order
entered 2 November 2012 by Judge John R. Jolly, Jr., in Superior Court,
Wake County. Heard in the Court of Appeals 8 October 2013.

> *Whitfield Bryson & Mason LLP, by Daniel K. Bryson, Scott C.
> Harris, Gary E. Mason, pro hac vice, Nicholas A. Migliaccio, pro
> hac vice, and Jason S. Rathod, pro hac vice, for Plaintiffs-Appellees.*

> *Bradley Arant Boult Cummings LLP, by Michael W. Knapp and
> Brian M. Rowlson, for Defendant/Third-Party Plaintiff-Appellant
> KB Home Raleigh-Durham, Inc.*

> *Hunton & Williams LLP, by A. Todd Brown and Ryan G. Rich, for
> Third-Party Defendant-Appellee Stock Building Supply, LLC.*

McGEE, Judge.

KB Home Raleigh-Durham, Inc. ("Defendant") is a general contrac-
tor in the business of building homes. Defendant has contracted with
many people over the years to build homes, including Mark Elliott, Tor
Gabrielson, Michelle Gabrielson, Michihiro Kashima, and Yoko Kashima
("Plaintiffs"). According to Defendant, each homeowner who purchased
a home directly from Defendant "entered into two separate written con-
tracts with [Defendant]: a New Home Purchase Agreement . . . and a
New Home Limited Warranty Agreement[.]" Defendant alleged that both
of these agreements included enforceable arbitration clauses.

Plaintiffs filed a class action complaint, "on behalf of themselves
and all other[s] . . . similarly situated," against Defendant and KB Home
North Carolina, Inc. on 5 December 2008, alleging breach of contract,
breach of express warranties, breach of implied warranties, negligence,
negligence *per se*, unfair and deceptive trade practices, and negligent
misrepresentation. Plaintiffs' complaint was based upon their conten-
tions that their homes, and those of the purported class members, were

improperly constructed in a manner allowing water and moisture to penetrate the exteriors of the houses, causing damage. Specifically, Plaintiffs alleged that the HardiPlank concrete siding on their homes had been improperly installed, and that this improper installation was the cause of the water and moisture intrusion into their homes. Defendant and KB Home North Carolina, Inc. filed a motion to dismiss on 6 February 2009. The matter was heard on 22 April 2009. By order filed 17 July 2009, the trial court dismissed KB Home North Carolina, Inc. from this action.

Defendant answered Plaintiffs' complaint on 5 August 2009, denying the majority of the allegations in Plaintiffs' complaint, and pleading twenty affirmative defenses. Defendant requested that the trial court deny Plaintiffs' request for class certification, and that "all issues of fact be tried by a jury[.]" Defendant did not move to compel arbitration in response to Plaintiff's complaint. Defendant and Plaintiffs began the discovery process, and Defendant served its first set of interrogatories on Plaintiffs on 13 October 2009. In this first set of interrogatories, Defendant defined "Plaintiffs" as the named Plaintiffs along with "any other known members of the Class as asserted in Plaintiffs' Complaint[.]" Defendant filed a third-party complaint against Stock Building Supply, LLC ("Stock") on 19 January 2010. Stock was the subcontractor hired by Defendant to install the HardiPlank siding. Defendant alleged that Stock "explicitly agreed to participate in binding arbitration regarding all claims arising from the construction of Plaintiffs' homes." However, Defendant did not demand arbitration at the time it filed its third-party complaint.

This action was designated a complex business case on 17 June 2010. Defendant, Plaintiffs, and Stock jointly filed a case management report with the North Carolina Business Court on 14 September 2010, in which Defendant and Plaintiffs agreed "that pretrial proceedings and trial will take place at the North Carolina Business Court sitting in Wake County, N.C., unless otherwise agreed to by the parties and the Court[,]" and that "no controversies exist with respect to . . . venue."

It appears that Defendant's first mention of arbitration with respect to Plaintiffs is contained in a supplemental response to Plaintiffs' third set of interrogatories, dated 28 March 2011. Plaintiffs asked: "Identify any contractual obligations that Plaintiffs have failed to perform which is the basis for your [affirmative defense that 'Plaintiffs have failed to perform Plaintiffs' own contractual obligations']." Defendant responded in part: "Plaintiffs, including any unnamed potential class members, have failed to timely mediate and then arbitrate the claims as provided by the terms of the New Home Purchase Agreement and Limited Warranty

Agreement." Defendant did not, however, move to compel arbitration at that time. The action proceeded, and the trial court entered an order on 27 February 2012 certifying the class as "[a]ll persons in the State of North Carolina who own a home constructed by Defendant . . . without a weather-restrictive barrier behind the exterior veneer of HardiPlank cement fiber lap siding" (excluding certain potential class members for reasons irrelevant to this appeal). Defendant appealed the order certifying the class on 28 March 2012. Defendant, on 12 April 2012, filed a motion to stay the class certification pending appeal. Defendant's motion to stay was denied by order entered 13 April 2012. Defendant then petitioned this Court for a writ of *supersedeas*, asking this Court to stay the proceedings below. Defendant's petition was denied on 27 August 2012. Defendant also filed a petition for writ of *certiorari* with this Court on 11 July 2012.

In its notice of appeal, Defendant argued the order certifying the class was immediately appealable because it affected a substantial right. Specifically, and for the first time, Defendant contended that the order certifying the class was an "order denying arbitration" because it denied Defendant "its substantial right to bilateral arbitration with the absent class members." However, Defendant still had not attempted to enforce any right to arbitration at the time it appealed the class certification order. Defendant finally filed a motion to compel arbitration on 12 April 2012. This was Defendant's first assertion of its rights pursuant to the arbitration clauses in the two agreements.

Plaintiffs moved this Court to dismiss Defendant's appeal on 10 July 2012, and argued that Defendant's petition for writ of *certiorari* should be denied. In response, Defendant argued that the class certification order "did more than just grant class certification. It inherently and simultaneously denied [Defendant's] substantial right to arbitration. For that separate and independent reason, it is immediately appealable[.]" Plaintiffs' motion was granted and Defendant's appeal was dismissed by order entered 28 August 2012. Defendant's petition for writ of *certiorari* was denied by order entered 30 August 2012.

The trial court denied Defendant's motion to compel arbitration by order filed 2 November 2012. Defendant appeals.

I.

[1] The present appeal is from an interlocutory order. However, the order denying arbitration "is immediately appealable because it involves a substantial right which might be lost if appeal is delayed." *Prime South*

ELLIOTT v. KB HOME N.C., INC.

[231 N.C. App. 332 (2013)]

*Homes v. Byrd,* 102 N.C. App. 255, 258, 401 S.E.2d 822, 825 (1991) (citations omitted).

## II.

**[2]** Initially, Defendant argues that the trial court erred in failing to determine, prior to deciding the issue of waiver, whether the Federal Arbitration Act (FAA) or the North Carolina Revised Uniform Arbitration Act (NCRUAA) controlled, because the requirements to prove waiver differ under the two acts. The "waiver" provision in the FAA argued by Defendant is contained in Section 3 of that act, but is referred to as "default" rather than "waiver." 9 USCS § 3 (a party may apply for a stay in court proceedings in order to enforce an agreement to arbitrate "providing the applicant for the stay is not in default in proceeding with such arbitration"). Defendant cites *Maxum Foundations, Inc. v. Salus Corp.,* 779 F.2d 974, 981 (4th Cir. 1985) for the proposition that: "Although this principle of 'default' is akin to waiver, the circumstances giving rise to a statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred." *Id.*

However, Section 3 of the FAA only applies in federal district court, not in state court. *See Southland Corp. v. Keating,* 465 U.S. 1, 16 n. 10, 79 L. Ed. 2d 1, 15 n. 10 (1984) ("In holding that the [FAA] preempts a state law that withdraws the power to enforce arbitration agreements, we do not hold that §§ 3 and 4 of the [FAA] apply to proceedings in state courts. Section 4, for example, provides that the Federal Rules of Civil Procedure apply in proceedings to compel arbitration. The Federal Rules do not apply in such state-court proceedings."); *Carter v. TD Ameritrade Holding Corp.,* __ N.C. App. __, __, 721 S.E.2d 256, 260 (2012); *Blow v. Shaughnessy,* 68 N.C. App. 1, 17, 313 S.E.2d 868, 877 (1984). Defendant's argument that the trial court should have determined whether the federal standard in Section 3 applies in the present case fails.

## III.

**[3]** Public policy favors arbitration because it represents "an expedited, efficient, relatively uncomplicated, alternative means of dispute resolution, with limited judicial intervention or participation, and without the primary expense of litigation — attorneys' fees." *Nucor Corp. v. General Bearing Corp.,* 333 N.C. 148, 154, 423 S.E.2d 747, 750 (1992) (citations omitted). " '[T]he purpose of arbitration is to reach a final settlement of disputed matters without litigation . . . .' " *Gemini Drilling & Found., LLC v. National Fire Ins. Co. of Hartford,* 192 N.C. App. 376, 383, 665 S.E.2d 505, 509 (2008) (citation omitted). The seminal case in North Carolina involving waiver of a contractual right to arbitrate is

*Cyclone Roofing Co. v. LaFave Co.*, 312 N.C. 224, 321 S.E.2d 872 (1984). In *Cyclone*, our Supreme Court discussed waiver of arbitration, holding:

> *Waiver* of a contractual right to arbitration *is a question of fact.* Because of the strong public policy in North Carolina favoring arbitration, *see* N.C. Gen. Stat. § 1-567.3 (1983), courts must closely scrutinize any allegation of waiver of such a favored right. ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."). Because of the reluctance to find waiver, we hold that a party has impliedly waived its contractual right to arbitration if by its delay or by actions it takes which are inconsistent with arbitration, another party to the contract is prejudiced by the order compelling arbitration.
>
> A party may be prejudiced if, for example, it is forced to bear the expenses of a lengthy trial; evidence helpful to a party is lost because of delay in the seeking of arbitration; a party's opponent takes advantage of judicial discovery procedures not available in arbitration; or, by reason of delay, a party has taken steps in litigation to its detriment or expended significant amounts of money thereupon.

*Cyclone*, 312 N.C. at 229-30, 321 S.E.2d at 876-77 (citations omitted) (emphasis added). The length of delay in asserting the right to arbitrate has been a factor considered in determining if waiver has occurred. *See HCW Retirement & Fin. Servs. v. HCW Employee Ben.* ___ N.C. ___, ___,747 S.E.2d 236, 239 (2013) ("In *Cyclone Roofing* this Court determined that the filing of pleadings and a month's delay before moving to compel arbitration did not constitute waiver when no discovery was conducted during the delay and no evidence was lost."); *Cyclone*, 312 N.C. at 233, 321 S.E.2d at 878; *Estate of Sykes v. Marcaccio*, 213 N.C. App. 563, 569, 713 S.E.2d 531, 536, *disc. review denied*, 365 N.C. 353, 717 S.E.2d 746 (2011); *Gemini*, 192 N.C. App. at 382, 665 S.E.2d at 509.

Despite the language of *Cyclone*, our Supreme Court has not addressed the weight to be given a trial court's finding of waiver as a fact, in relation to the strong public policy favoring arbitration. However, this Court has applied the general presumption of correctness accorded to a trial court's findings of fact to its waiver determinations. *See Sykes*, 213 N.C. App. at 567, 713 S.E.2d at 535 ("[w]hether a party has waived

**ELLIOTT v. KB HOME N.C., INC.**

[231 N.C. App. 332 (2013)]

[arbitration] is a question of fact, and the trial court's findings of fact are binding on appeal when supported by competent evidence") (citation omitted); *Moose v. Versailles Condo. Ass'n*, 171 N.C. App. 377, 382, 614 S.E.2d 418, 422 (2005); *Prime South Homes*, 102 N.C. App. at 258, 401 S.E.2d at 825.[1] Further, when a party has allowed significant time to pass, participated in litigation involving judicial intervention and participation, and thereby caused the expenditure of significant expense, including attorneys' fees, the strong public policy in favor of arbitration is thereby diminished. *See Nucor*, 333 N.C. at 154, 423 S.E.2d at 750.

We review the evidence considered by the trial court in making its factual determination on the issue of waiver. The trial court's 2 November 2012 order included findings that: (1) Plaintiff initiated this class action on 5 December 2008, (2) Defendant filed a third-party complaint against Stock on 7 January 2010, (3) this case was designated a complex business case on 17 June 2010, (4) the class was certified by order entered 27 February 2012, and (5) Defendant appealed the certification order on 28 March 2012. The trial court included the following additional relevant findings in its 2 November 2012 order:[2]

> [8]   On July 30, 2012, the unnamed class members filed the Motion to Intervene, seeking to intervene in this civil action as named plaintiffs to preserve their rights in the event the Order on Class Certification was overturned as a result of the Appeal.
>
> [9]   On August 22, 2012, KB Home filed the Second Motion to Stay, seeking to compel arbitration with respect to the unnamed class members in the event the court granted the Motion to Intervene.
>
> [10] On August 28, 2012, the North Carolina Court of Appeals dismissed the Appeal.

---

1. We acknowledge that this Court has also treated a determination of waiver as a conclusion of law, sometimes in the same opinion stating that it is a finding of fact. *See, e.g., Prime*, 102 N.C. App. 255, 401 S.E.2d 822. Our Supreme Court has also used language which may be interpreted as treating determination of waiver as a conclusion of law. *See HCW*, __ N.C. at __, 747 S.E.2d at 241 ("We conclude that plaintiffs have failed to prove prejudicial actions and therefore, that the trial court and Court of Appeals erred in finding waiver of contractual arbitration rights."). We do not find the language in *HCW* to contain sufficient certainty to overrule the clear statement in *Cyclone* that "[w]aiver of a contractual right to arbitration is a question of fact." *Cyclone*, 312 N.C. at 229, 321 S.E.2d at 876. This is an issue to be resolved by our Supreme Court.

2. The trial court included numerous footnotes. We have omitted some footnotes, and included others as parentheticals within the body of the trial court's findings included herein.

[11] As a result of the dismissal of the Appeal, on September 10, 2012, the unnamed class members filed the Motion to Voluntarily Dismiss, seeking to voluntarily dismiss the Motion to Intervene without prejudice.

[12] The Motions have been fully briefed and are ripe for determination.

. . . .

[33] In opposition to the First Motion to Stay, Plaintiffs argue that KB Home waived its right to arbitrate . . . by failing to assert its contractual right to arbitration earlier. KB Home argues that it has timely asserted its right to arbitrate against all Plaintiffs. However, in the alternative, KB Home seeks to persuade the court that even if waiver is found with respect to the named Plaintiffs, waiver should not be found with respect to the unnamed class members because KB Home could not have compelled arbitration against the unnamed class members at any time before the court certified the class.

. . . .

[36] . . . Plaintiffs have neither been forced to bear the expense of long trial, nor have Plaintiffs lost helpful evidence. Consequently, Plaintiffs' principal argument for waiver is that they have been prejudiced by incurring significant litigation expenses to date and that KB Home has engaged in discovery procedures not available in arbitration.

. . . .

[38] Here, Plaintiffs argue that KB Home's right to arbitrate this dispute arose in December 2008 when the named Plaintiffs filed their Complaint. KB Home did not file the First Motion to Stay until April 12, 2012. That was more than three years after this action was filed and after substantial effort, time and money had been expended by the parties in discovery, motion practice and related procedural pre-trial initiatives. (Although neither required nor determinative, KB Home did not specifically assert its right to arbitration in either its Answer as an affirmative defense, filed on August 5, 2009, or in its response to Plaintiffs' Third Set of Interrogatories and Request for Production

of Documents.) KB Home could have asserted its arbitration rights much sooner in this dispute, but chose not to do so. The court finds and concludes that by such delay KB Home acted inconsistently with its arbitration rights. Notwithstanding this conclusion, Plaintiffs must still show that they have been prejudiced by KB Home's delay.

[39] To show prejudicial effect, Plaintiffs have submitted evidence of fees and other expenses incurred by Plaintiffs. In totality, Plaintiffs have incurred approximately $100,000 in fees and other expenses litigating the Claims. (These fees and expenses accrued from preparing for and attending negotiation conferences, depositions, motions and hearings, as well as fees spent on expert testimony.)[.] The costs that have been incurred are the result of the parties participating in four hearings, (The four hearings held have been on KB Home's Motion to Dismiss, Plaintiffs' Motion to Compel Discovery of KB Home, Plaintiffs' Motion for Class Certification and KB Home's Motion to Stay Pending Appeal.)[,] taking or defending twenty depositions across the country, obtaining and working with expert witnesses and engaging in other discovery. These costs have been incurred by the named Plaintiffs while litigating the Claims on their own behalf and also while litigating the Claims on behalf of the unnamed class members. KB Home's delayed attempt to enforce the arbitration provisions only after Plaintiffs have expended material amounts of time and resources in pursuing their Claims would be prejudicial to Plaintiffs. Such time and resources were expended after KB Home's right to arbitrate accrued and could have been avoided through an earlier demand for arbitration. KB Home could have demanded arbitration as early as 2008, well before the named Plaintiffs actively litigated the Claims. Permitting KB Home to enforce its arbitration rights now would be inconsistent with the principles of waiver outlined in *Servomation*. Accordingly, the court CONCLUDES that KB Home has waived its right to compel the named Plaintiffs to arbitrate their Claims.

The trial court then ruled on whether Defendant had waived its right to arbitration with respect to the unnamed class members:

[40] The court must also consider whether KB Home has waived its right to compel arbitration with respect to the

unnamed class members. KB Home argues that it could not have asserted its arbitration rights against the unnamed class members at any time before the court certified the class on February 27, 2012. The court is not persuaded by KB Home's argument.

[41] Permitting KB Home to compel arbitration with regard to the unnamed class members would be prejudicial to the named Plaintiffs. The reality of class-action litigation requires the named Plaintiffs to incur expenses litigating the Claims on behalf of the entire class, which the named Plaintiffs in this case have done for more than three years. Allowing KB Home to compel arbitration with respect to the unnamed class members would render the named Plaintiffs' efforts pursuing the class Claims meaningless. KB Home had knowledge that the named Plaintiffs were litigating the Claims as a class action from the outset and were incurring substantial costs while doing so. (KB Home was on notice no later than December 5, 2008, that the named Plaintiffs were bringing their Claims as a class action when the Complaint was filed. Moreover, evidence suggests that KB Home had notice of Plaintiffs' class action Claims, even before the Complaint was filed, during informal negotiations to resolve the dispute. . . . . ("Throughout the [negotiation] process, Plaintiffs represented that they were acting on their behalf and on behalf of similarly situated homeowners.").) Simply put, KB Home sat on its rights to arbitrate for too long. (The court is also concerned by KB Home's attempt to compel arbitration as to the unnamed class members, thereby effectively "undoing" this court's Order on Class Certification and getting the proverbial "second bite at the apple" for class certification. . . . . For the same considerations of fairness and the efficient administration of justice outlined by the court in *Kingsbury*, this court cannot accept KB Home's argument that it has not waived its right to arbitrate with respect to the unnamed class members.)[.] Therefore, KB Home is barred from exercising any alleged arbitration rights now, even as to the unnamed class members. For the foregoing reasons, the court further CONCLUDES that KB Home has waived its right to compel the unnamed class members to arbitrate the Claims. Accordingly, the First Motion to Stay should be DENIED with respect to all Plaintiffs. (Citations omitted).

We hold that competent evidence supports the trial court's findings that Defendant, over more than a three-year period in which it participated in the litigation of this action, did nothing to assert any right to arbitrate. We affirm the trial court's determination that Defendant's actions were inconsistent with its right to arbitration. *Cyclone*, 312 N.C. at 229, 321 S.E.2d at 876.

Concerning prejudice, the trial court found in the present case that Plaintiffs had incurred substantial costs preparing for litigation in this class action suit:

> To show prejudicial effect, Plaintiffs have submitted evidence of fees and other expenses incurred by Plaintiffs. In totality, Plaintiffs have incurred approximately $100,000 in fees and other expenses litigating the Claims. (These fees and expenses accrued from preparing for and attending negotiation conferences, depositions, motions and hearings, as well as fees spent on expert testimony.)[.] The costs that have been incurred are the result of the parties participating in four hearings, . . . taking or defending twenty depositions across the country, obtaining and working with expert witnesses and engaging in other discovery. These costs have been incurred by the named Plaintiffs while litigating the Claims on their own behalf and also while litigating the Claims on behalf of the unnamed class members. KB Home's delayed attempt to enforce the arbitration provisions only after Plaintiffs have expended material amounts of time and resources in pursuing their Claims would be prejudicial to Plaintiffs. Such time and resources were expended after KB Home's right to arbitrate accrued and could have been avoided through an earlier demand for arbitration. KB Home could have demanded arbitration as early as 2008, well before the named Plaintiffs actively litigated the Claims. Permitting KB Home to enforce its arbitration rights now would be inconsistent with the principles of waiver outlined in *Servomation*. Accordingly, the court CONCLUDES that KB Home has waived its right to compel the named Plaintiffs to arbitrate their Claims.

This Court, in analyzing whether a party has incurred substantial expense, has required:

> [W]hen considering whether a delay in requesting arbitra-
> tion resulted in significant expense for the party opposing
> arbitration, the trial court must make findings (1) whether
> the expenses occurred after the right to arbitration
> accrued, and (2) whether the expenses could have been
> avoided through an earlier demand for arbitration.

*Sykes*, 213 N.C. App. at 568, 713 S.E.2d at 536 (citations omitted). We hold that the more than three-year delay in requesting arbitration, and the approximately $100,000.00 in fees found by the trial court to have been incurred by Plaintiffs in litigating the claims thus far, constitute significant expenditures of time and expenses.

Defendant argues that the trial court's findings fail to show how much of the approximately $100,000.00 constitutes expenses that could have been avoided had Defendant sought to compel arbitration at an earlier date. This Court addressed a similar argument in *Sykes*. In *Sykes*, the attorney for Farm Bureau  the party opposing arbitration  filed the following affidavit:

> "Farm Bureau took significant steps in this litigation to its
> detriment and expended a significant amount of money on
> the litigation, through appearance by the undersigned at
> numerous hearings in both Halifax County Superior Court
> and Nash County Superior Court, on multiple motions
> filed by multiple parties."

*Sykes*, 213 N.C. App. at 569, 713 S.E.2d at 536. This Court held that, though the trial court could have been more specific in its determination that Farm Bureau incurred significant expenses in litigation before arbitration was demanded, its findings were minimally sufficient.

> While [the affidavit] did not quantify the expenses, the trial
> court's specific findings regarding what occurred during
> the superior court proceedings and the . . . affidavit are
> sufficient to support the ultimate finding that Farm Bureau
> expended "significant resources," sufficient to consti-
> tute prejudice. We can conclude without specific dollar
> amounts that attendance by counsel at multiple hearings
> and defense of a litigation over a two-year period (with the
> case being twice calendared for trial as well as other hear-
> ings) involves "significant resources." As our Supreme
> Court has stated, "[J]ustice does not require that courts
> profess to be more ignorant than the rest of mankind."

ELLIOTT v. KB HOME N.C., INC.

[231 N.C. App. 332 (2013)]

. . . .

Here, we have specific legal proceedings over a two-year period that entailed legal expenses and effort that would have been unnecessary had a demand for arbitration been made earlier. This case is factually similar to *Big Valley Home Ctr., Inc. v. Mullican*, 774 So.2d 558, 562 (Ala.2000), in which the plaintiff filed a complaint on 24 October 1996, and one of the defendants waited for more than two years before filing a motion to compel arbitration. During that time, the co-defendant had answered the complaint, the plaintiff was deposed, the trial was continued five times, two judges were recused, and a settlement offer was made to the plaintiff.

. . . .

We find the reasoning in *Big Valley* persuasive. We hold that the trial court properly concluded that plaintiff waived the right to arbitrate by waiting until the eve of the second trial date to file a motion to compel arbitration, causing Farm Bureau, over more than two years, to prepare for and attend three court hearings and engage in other defense activities, resulting in an expenditure of resources (including time and expense) that would have been unnecessary had plaintiff moved to compel arbitration earlier. While the better practice would be for [Farm Bureau] to provide specific information about the time and expense incurred and for the trial court to make findings of fact based on that information, the findings of fact in this case are minimally sufficient to establish waiver.

*Sykes*, 213 N.C. App. at 569-70, 713 S.E.2d at 536-37 (citations omitted). We hold that the evidence before the trial court in the present case, and the findings of fact based upon that evidence, are at least as compelling as those in *Sykes*. We affirm the trial court's finding of waiver with respect to Plaintiffs.

IV.

[4] Defendant further argues that it did not waive its right to arbitration with respect to the unnamed class members because: "(1) the right to compel arbitration with unnamed class members did not accrue until they became parties, and (2) there is no evidence in the record that

named Plaintiffs or absent class members incurred any expenses after the right to arbitration with the unnamed class members accrued."

Defendant cites to certain federal opinions for the proposition that it had no right to compel arbitration against unnamed class members before the class was certified. We do not find these cases persuasive, as we do not hold that Defendant could have, or should have, moved to compel arbitration with respect to the unnamed class members before the class was certified. The specific question before us is whether, in an action initiated as a class action, a defendant's actions constituting waiver of its right to compel arbitration against named plaintiffs can be imputed to the entire class once certification occurs.

Defendant cites an unpublished Northern District of California opinion, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 1753784 (N.D. Cal., May 9, 2011), for the proposition that "litigation conduct with named plaintiffs prior to class certification could not waive arbitration rights as to unnamed class members[.]" However, we find the reasoning in *Edwards v. First American Corp.*, 289 F.R.D. 296, 307-08 (C.D. Cal. 2012), more persuasive. In *Edwards*, the federal district court discussed its reasoning for holding that the defendants had waived their rights to arbitration to the unnamed as well as the named plaintiffs.

> The Court does not find the reasoning of TFT–LCD to be persuasive. It is true that Defendants likely could not have moved to compel arbitration of the Tower City class members' claims until after the class was certified. Nevertheless, Defendants could have asserted their intention to raise arbitration as a defense at a much earlier stage in the proceeding. Indeed, even after the Ninth Circuit ordered the class certified in June 2010, Defendants[] delayed bringing this motion until April 2011, after this Court denied Defendants' application for a stay. This conduct appears to be highly calculated — Defendants would obviously prefer that Plaintiff's claims be dismissed on the merits, as any such ruling may be used for the purposes of issue preclusion and precedential effect in subsequent actions. Defendants' conduct thus evinced "a conscious decision to continue judicial judgment on the merits." Only after it appeared to Defendants that this would not be possible did they file the instant motion. The Court cannot sanction such behavior; to do so would only encourage gamesmanship of this type in the future, resulting in further waste of judicial resources.

> The Court finds the reasoning in *Kingsbury v. U.S. Greenfiber, LLC*, No. CF 08–00151–AHM (AGRx), 2012 WL 2775022 (C.D. Cal. Jun. 29, 2012), instructive. There the court held that the defendant waived his right to arbitrate when he actively litigated the case "for over four years." This litigation included. discovery, a motion to remand, and four motions to certify a class. The court reasoned that asserting a right to arbitrate was "an argument [defendant] was fully capable of raising in the context of the four motions for class certification. Yet [defendant] did not pursue its defense of arbitration. Its failure to do so was inconsistent with its arbitration rights."
>
> Just as in *Kingsbury*, Defendants here could have asserted their right, or at the very least their intention, to arbitrate at any number of points in the past five years. Their failure to do so is patently inconsistent with their attempt to exercise that right at this late juncture.

*Edwards*, 289 F.R.D. at 307 (citations omitted). The Court in *Edwards* also determined that the plaintiffs were prejudiced, holding:

> Finally, it is also not disputed that Defendants' failure to assert their right to arbitrate until now has prejudiced Plaintiff. First and most obviously, granting Defendants' Motion to Compel Arbitration would eliminate the class members' opportunity to pursue these claims as a class action. Further, Defendants' delay in asserting their right to arbitrate has resulted in the expenditure of enormous costs by Edwards and class counsel in litigating this matter at every level of the federal judiciary over the past five years, as well as thousands of hours of attorney time. Forcing the class to arbitrate now would result in those costs being stranded. In short, there is no question that Plaintiff has "relied to [her] detriment on [Defendants'] failure" to assert their right to arbitration before now.

*Id.* at 307-08 (citation omitted).

While recognizing that the facts in the present case are not identical with those in *Edwards*, we hold that Defendant waived its right to compel the unnamed class members to arbitration. More than three years and four months passed between the initiation of this class action and Defendant's motion to compel arbitration. Defendant litigated this case that entire time while sitting on any contractual rights it had to arbitrate.

Plaintiffs and their attorneys invested significant amounts of time and sums of money prosecuting this case on behalf of themselves and the purported class. The fact that much of this expenditure occurred before the class was certified does not negate the fact that, upon certification, the class became tangible beneficiaries of that expenditure. We agree with the court in *Edwards* that "gamesmanship" of this kind should not be encouraged. *Edwards*, 289 F.R.D. at 307-08. Holding otherwise would defeat, rather than promote, the public policy behind the favor with which the courts of this state generally view arbitration – expediting an efficient and relatively simple means of resolving disputes without the multitude of costs, in both time and money, generally associated with litigation. *See Nucor*, 333 N.C. at 154, 423 S.E.2d at 750; *Gemini*, 192 N.C. App. at 383, 665 S.E.2d at 509. The trial court did not err in ruling that Defendant had waived any right to arbitrate with respect to the unnamed class members.

V.

[5] Defendant further argues that the trial court erred in "failing to rule on Stock's obligation to arbitrate." Defendant's argument in this regard is entirely premised upon its arguments that the trial court erred in its rulings on the arbitrability of the disputes involving Plaintiffs and the class. Having held that the trial court did not err in ruling that Defendant had waived its rights in this regard, Defendant's argument concerning Stock necessarily fails.

VI.

We affirm the ruling of the trial court. We note that our holding remains the same in this case regardless of whether we treat the trial court's decision on waiver as a finding of fact or conclusion of law.

Affirmed.

Judges McCULLOUGH and DILLON concur.