IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-908

Filed: 2 January 2017

Union County, No. 15 CVS 2234

iPAYMENT, INC., Plaintiff,

v.

KELLY M. GRAINGER, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF GEORGE GREGORY GRAINGER, WEAKLEY GETWAYS, LLC, 1ST AMERICARD, INC., JESSICA GRAINGER, and UNIVERSAL FINANCE & LEASING CORPORATION, Defendants.

Appeal by Plaintiff from an order entered 25 August 2016 by Judge Theodore S. Royster, Jr., in Union County Superior Court. Heard in the Court of Appeals 8 February 2017.

> *Rayburn Cooper & Durham, P.A., by Ross R. Fulton and Tory Ian Summey, for Plaintiff-Appellant.*

> *Koehler & Associates, by Stephen D. Koehler, for Defendants-Appellees.*

INMAN, Judge.

iPayment Inc. ("Plaintiff") appeals from an order denying its motion to compel arbitration of counterclaims brought against Plaintiff by Universal Finance and Leasing Corp. ("Universal"). Plaintiff argues that the trial court erred in finding that Plaintiff waived its right to compel arbitration on Universal's counterclaims. After careful review, we reverse the trial court's order.

**Factual and Procedural Background**

This appeal arises from a dispute between Plaintiff and 1st Americard, Inc. ("Americard") involving an Asset Purchase Agreement, governed by New York law, which resulted in an arbitration award (the "Arbitration Award") of $2,350,264.74 in favor Plaintiff.

The parties are in the business of processing bankcard payments for retail merchants. Their rights and duties are governed by interconnecting agreements, specifically an Asset Purchase Agreement between Plaintiff and Americard and a separate Split Funding Agreement between Plaintiff and Universal.

Kelly M. Grainger ("Kelly") is the President and sole shareholder of Americard. Jessica Grainger ("Jessica"), daughter of Kelly, was initially an employee of Americard before becoming an employee of Universal following the death of her father George Gregory Grainger.[1] At all relevant times, Kelly and Jessica were citizens and residents of Union County, North Carolina. Kelly and Jessica were also the sole officers and employees of Universal. Weakley Getaways, LLC ("Weakley") is a corporation based in Panama City Beach, Florida, owned and operated by Cathy Baker, Kelly Grainger's sister, and Cathy's husband, Gordon H. Weakley.

On 28 June 2013, Plaintiff and Americard executed an Asset Purchase Agreement, whereby Plaintiff agreed to purchase rights to Americard's existing

---

[1] George Gregory Grainger, spouse of Kelly, was the Chief Executive Officer of Americard and passed away on 24 April 2015. George Grainger was a party to the original arbitration which gave rise to the Arbitration Award.

merchant accounts in exchange for $4,867,852.32. Plaintiff and Americard also executed a Sub-Independent Sales Organization agreement ("Sub-ISO"), whereby Americard agreed to submit all new merchant applications for payment processing services exclusively to Plaintiff during the "Initial Term" and to use its best efforts to obtain new merchants. The Asset Purchase Agreement included the following arbitration clause and choice of law provision:

> BINDING ARBITRATION. EXCEPT AS PROVIDED IN SECTION 5.2(C) HEREOF, ANY DISPUTE OR CLAIM BETWEEN THE PARTIES ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT SHALL BE FULLY AND FINALLY RESOLVED BY BINDING ARBITRATION IN THE CITY OF NEW YORK, NEW YORK COUNTY IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES AND PRACTICES OF THE AMERICAN ARBITRATION ASSOCIATION ("AAA") FROM TIME TO TIME IN FORCE AND EFFECT.
>
> . . .
>
> GOVERNING LAW. THIS AGREEMENT SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO ANY JURISDICTION'S PRINCIPLES OF CONFLICT OF LAWS.

A month after executing the Asset Purchase Agreement, on 25 July 2013, Plaintiff and Universal executed a Split Funding Agreement providing that Universal would advance funds to merchants serviced by Plaintiff in exchange for Plaintiff's remittal of certain funds related to those accounts. Similar to the Asset Purchase

Agreement, the Split Funding Agreement included the following mandatory arbitration clause (the "Arbitration Clause") and choice of law provision (the "Choice of Law Provision"):

> BINDING ARBITRATION. EXCEPT FOR ANY ACTION FOR INJUNCTIVE RELIEF WITH RESPECT TO THE ENFORCEMENT OF ANY PARTY'S RIGHTS UNDER SECTION 11 OR 12 HEREOF, ANY DISPUTE OR CLAIM BETWEEN THE PARTIES ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE FULLY AND FINALLY RESOLVED BY BINDING ARBITRATION IN THE CITY AND COUNTY OF NEW YORK IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES AND PRACTICES OF THE AMERICAN ARBITRATION ASSOCIATION ("AAA") FROM TIME TO TIME IN FORCE AND EFFECT.
>
> . . .
>
> GOVERNING LAW. THIS AGREEMENT SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO ANY JURISDICTION'S PRINCIPLES OF CONFLICT OF LAWS.

Within a year after purchasing Americard's merchant accounts, Plaintiff brought an arbitration action in New York against Americard, Kelly, and George Grainger alleging that they made misrepresentations to Plaintiff and breached the Asset Purchase Agreement and associated agreements, excluding the Split Funding Agreement. In February 2015, Plaintiff obtained the Arbitration Award finding Americard, Kelly, and Jessica jointly and severally liable to Plaintiff for

$2,350,264.74. Plaintiff then filed a motion to confirm the arbitration award in the United States District Court for the Southern District of New York.

On 25 August 2015, while Plaintiff's motion to confirm the arbitration award was pending, Plaintiff filed a verified complaint in Union County Superior Court alleging that immediately after the arbitration award was entered, Kelly and George Grainger entered into a scheme to fraudulently transfer their assets to Weakley in an attempt to avoid Plaintiff's eventual judgment from the Arbitration Award. On 18 September 2015, Plaintiff amended its original complaint to include Kelly in her capacity as the administrator of the estate of George Gregory Grainger. On 26 October 2015, Plaintiff filed its second amended verified complaint (the "Second Amended Complaint"), which named Jessica, Americard, and Universal as additional defendants in the action. Plaintiff asserted two claims against Universal as a transferee of fraudulent transfers from the other Defendants, alleging "[u]pon information and belief, Universal Finance is the recipient of some or all of those fraudulently transferred assets from the Graingers or 1st AmeriCard or their proceeds." The Second Amended Complaint alleged no conduct by or on behalf of Universal other than receiving fraudulent transfers.

Plaintiff began pursuing discovery in the fraudulent transfer litigation on 24 September 2015 by propounding to Kelly interrogatories, requests for production of documents, and requests for admissions. On 1 October 2015, prior to adding

Americard and Universal as defendants in the action, Plaintiff issued a subpoena to a third-party accountant for all documents relating to Americard, Universal, or Kelly and George Grainger "for the period from January 1, 2013 through the present, including, but not limited to, tax returns, financial statements, work papers, bank account records, and all correspondence (including emails, letters, and text messages)." Later in October 2015, but prior to naming Americard and Universal as defendants in the action, Plaintiff issued subpoenas to five banks seeking additional documents and information relating to specific accounts and transactions involving Kelly, George Grainger, Americard, and Universal.

In December 2015, after asserting claims against Americard, Universal, and Jessica, Plaintiff served on Americard and Jessica a set of interrogatories, requests for production of documents, and requests for admissions, and served interrogatories and requests for production of documents on Universal.

On 29 December 2015, Defendants filed a joint answer to Plaintiff's Second Amended Complaint and counterclaims by Universal against Plaintiff for breach of contract, defamation, tortious interference with contract and/or prospective advantage, and unfair and deceptive trade practices and unfair methods of competition. All of the counterclaims related to the Split Funding Agreement.

On 26 and 27 January 2016, Plaintiff took depositions of Kelly and Jessica. Plaintiff's counsel specified before questioning Kelly about Universal's counterclaims:

"iPayment is reserving all rights to argue that counterclaim 1 [breach of the Split Funding Agreement] is subject to arbitration under its contract and as [sic] they're participating in discovery without waiving any of those rights to those arguments." Plaintiff's counsel went on to ask Kelly a series of questions, including, *inter alia*: "What false statements—false and misleading statements has iPayment made about [Universal]?" and "[w]hat false and misleading statements has iPayment made about the officers of Universal Finance & Leasing?" Plaintiff's counsel also inquired about the internal operations of Universal, communications between several merchants and Universal, and the structure of the Split Funding Agreement.

On 24 February 2016, Plaintiff filed a motion to dismiss Universal's counterclaims arising from the Split Funding Agreement or, in the alternative, to stay the litigation and compel arbitration of the counterclaims ("Motion to Compel").

The Motion to Compel came on for hearing on 4 April 2016. Universal asserted that Plaintiff waived its right to compel arbitration of Universal's counterclaims under the Split Funding Agreement because of Plaintiff's participation in this litigation, including Plaintiff's pursuit of discovery.

On 25 April 2016, the trial court entered an order denying Plaintiff's Motion to Compel. The trial court held that "[t]he conduct of the Plaintiff in this action was clearly inconsistent with the arbitration provision contained in the Split Funding

Agreement and manifests Plaintiff's election to submit to the jurisdiction of this forum."

Plaintiff filed its notice of appeal on 9 May 2016.

**Appellate Jurisdiction**

An order denying a motion to compel arbitration is interlocutory. "Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Goldston v. American Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). However, our courts have long held that an order denying a motion to compel arbitration affects a substantial right which might be lost if the appeal is delayed, and therefore is immediately appealable. *Prime South Homes, Inc. v. Byrd*, 102 N.C. App. 255, 258, 401 S.E.2d 822, 825 (1991). Accordingly, we hold this appeal is properly before us.

**Analysis**

**I. Choice of Law**

The trial court concluded, and the parties do not dispute, that New York law governs the Arbitration Clause, as provided in the Split Funding Agreement. A choice of law provision agreed upon by parties is "generally binding on the interpreting court as long as they had a reasonable basis for their choice and the law of the chosen State does not violate a fundamental public policy of the state or otherwise applicable law." *Torres v. McClain*, 140 N.C. App. 238, 241, 535 S.E.2d

623, 625 (2000) (citations omitted). When the parties entered into the Split Funding Agreement, Plaintiff's principle place of business was New York, so there was a reasonable basis for the choice of law provision. Additionally, applying New York law will not violate any fundamental public policy of the State of North Carolina. *See Behr v. Behr*, 46 N.C. App. 694, 696-97, 266 S.E.2d 393, 395 (1980) (applying New York law to the interpretation of a separation agreement).

## II. Waiver of Right to Arbitration

Universal does not dispute that the Arbitration Clause in the Split Funding Agreement applies to its counterclaims. Rather, Universal asserts that Plaintiff waived its right to compel arbitration of the counterclaims by engaging in litigation and by obtaining discovery beyond that allowed by the rules of arbitration. Universal's contention relies on the presupposition that Plaintiff's fraudulent transfer claims against Universal, asserted in the Second Amended Complaint, were also subject to the Arbitration Clause. We disagree with this presupposition and hold that Plaintiff did not waive its arbitration rights by litigating and pursuing discovery related to that claim.

The trial court, in determining that Plaintiff acted in a manner inconsistent with its right to arbitrate and prejudiced Universal, considered discovery that Plaintiff pursued prior to Universal's filing of its counterclaims. Because we disagree with the premise upon which Universal's argument lies—*i.e.*, that Plaintiff's claims

asserted in the Second Amended Complaint against Universal invoked the Arbitration Clause in the Split Funding Agreement—and conclude that Universal failed to present competent evidence that Plaintiff acted inconsistently with its right to compel arbitration or that Universal was prejudiced by Plaintiff's actions prior to the assertion of its right to compel, we reverse the trial court's order.

### A. Standard of Review

Our precedent reflects a protracted dispute, and divergence of decisions, regarding the standard of review applicable to a trial court's denial of a motion to compel arbitration on the basis that a party waived this contractual right.[2]

The seminal decision, *Cyclone Roofing Co., Inc. v. David M. LaFave Co., Inc.*, 312 N.C. 224, 321 S.E.2d 872 (1984), explains that arbitration is a contractual right, which may be waived. The misperception about whether this is a question of fact or law arises from the North Carolina Supreme Court's plain statement in *Cyclone*: "Waiver of a contractual right to arbitration is a question of fact." *Id.* at 229, 321 S.E.2d at 876 (citations omitted). Following this language, several decisions have treated the issue as one of pure fact. *See, e.g., Elliott*, 231 N.C. App. at 332, 752 S.E.2d at 694. However, close examination of the Supreme Court's own

---

[2] In *Elliott v. KB Home North Carolina, Inc.*, 231 N.C. App. 332, 752 S.E.2d 694 (2013), this Court highlighted the divergence between what our courts state is the standard of review and what our courts apply in their analyses. 321 N.C. App. at 337-38 n. 1, 752 S.E.2d at 698 n. 1 ("We acknowledge that this Court has also treated a determination of waiver as a conclusion of law, sometimes in the same opinion stating that it is a finding of fact." (citations omitted)).

interpretation of *Cyclone* and the question of whether waiver is an issue of law or fact, along with later decisions' treatment of the issue, lead us to conclude that whether a party has waived the contractual right to arbitration is actually a mixed question of law and fact. This conclusion affects the applicable standard of review of the trial court's determination that Plaintiff waived its arbitration rights.

In *Servomation Corp. v. Hickory Const. Co.*, 316 N.C. 543, 544-45, 342 S.E.2d 853, 854 (1986), the North Carolina Supreme Court explained:

> The leading case on arbitration in North Carolina, *Cyclone Roofing Co. v. Lafave Co.*, 312 N.C. 224, 321 S.E.2d 872, teaches that arbitration is a contractual right which may be waived. However, the mere filing of a complaint or answer does not result in waiver of arbitration absent evidence showing prejudice to the adverse party.
>
> A party may be prejudiced by his adversary's delay in seeking arbitration if (1) it is forced to bear the expense of a long trial, (2) it loses helpful evidence, (3) it takes steps in litigation to its detriment or expends significant amounts of money on the litigation, or (4) its opponent makes use of judicial discovery procedures not available in arbitration.
>
> There is a strong public policy favoring the settlement of disputes by arbitration, and doubts concerning the scope of arbitrable issues will be resolved in favor of the party seeking arbitration.
>
> We note holdings from other jurisdictions, consistent with *Cyclone*, to the effect that a party waives arbitration when it engages in conduct inconsistent with arbitration which results in prejudice to the party opposing arbitration. *Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985); *ATSA of California, Inc. v. Continental Ins.*

*Co.*, 702 F.2d 172, 175 (9th Cir. 1983).

> *Applying these rules of law to the facts of [the] instant case*
> we initially observe that there has been no long trial.
> Further there is no evidence that [the] plaintiff has lost
> helpful evidence or taken steps in litigation to its
> detriment.

316 N.C. at 544-45, 342 S.E.2d at 854 (emphasis added). *Servomation* explicitly holds

that the determination of whether a party has waived its right requires the

application of "rules of law." *Id.* at 545, 342 S.E.2d at 854.

Whether an issue is one of fact or law turns on whether its determination

requires the application of legal principles.

> The classification of a determination as either a finding of
> fact or a conclusion of law is admittedly difficult. As a
> general rule, however, any determination requiring the
> exercise of judgment, *see Plott v. Plott*, 313 N.C. 63, 74, 326
> S.E.2d 863, 870 (1985), or the application of legal
> principles, *see Quick v. Quick*, 305 N.C. 446, 452, 290
> S.E.2d 653, 657-58 (1982), is more properly classified as a
> conclusion of law. Any determination reached through
> "logical reasoning from the evidentiary facts" is more
> properly classified a finding of fact. *Quick*, 305 N.C. at 452,
> 290 S.E.2d at 657-58 (quoting *Woodard v. Mordecai*, 234
> N.C. 463, 472, 67 S.E.2d 639, 645 (1951)).

*In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997).

Some prior decisions by this Court have perpetuated confusion regarding the

appropriate standard of review regarding waiver of the right to arbitrate. In *Prime*

*South Homes*, despite stating that waiver is a question of fact, we reviewed *de novo*

the trial court's conclusion that the plaintiff waived his right to arbitration. 102 N.C. App. at 258-59, 401 S.E.2d at 825.

We interpret *Cyclone*'s reference to waiver as a question of fact to apply to the question of whether a party has in fact engaged in a particular action. But we follow *Servomation,* and the manner in which this issue has been addressed in other decisions, and conclude that the question of whether those actions, once found as fact by the trial court, amount to waiver of the right to arbitrate a dispute is a question of law subject to *de novo* review. *Servomation*, 316 N.C. at 545, 342 S.E.2d at 854 ("Applying these *rules of law* to the facts of [the] instant case . . . ." (emphasis added)); *see also Moose v. Versailles Condominium Ass'n*, 171 N.C. App. 377, 382, 614 S.E.2d 418, 422 (holding that we review whether a trial court's findings of fact "support its conclusions of law that a party has waived its right to compel arbitration"). This interpretation is consistent with the holdings in *Cyclone* and *Servomation* and resolves the inconsistency in our jurisprudence.

Accordingly, we first review whether the trial court's findings of fact are supported by competent evidence, and then examine *de novo* whether those findings taken together support the legal conclusion that Plaintiff waived its right to compel arbitration. As required by the parties' Choice of Law Provision, we apply New York law with regard to the substantive legal issue of what actions amount to waiver of the right to compel.

## B. Discussion

The primary question before us is whether Plaintiff's actions prior to seeking arbitration of Universal's counterclaims waived Plaintiff's contractual right to compel arbitration. We note that there is a split in New York law as to when the Federal Arbitration Act ("FAA") applies and whether the standard for demonstrating waiver under the FAA differs from New York's standard—specifically, whether demonstration of prejudice is a requisite for the conclusion of waiver. *Compare Gramercy Advisors LLC v. J.A. Green Dev. Corp.*, No. 650166/2014, 2015 WL 1623789 *1, *6 (N.Y. Sup. Ct. Aug. 13, 2015), *aff'd*, 23 N.Y.S.3d 38, 134 A.D.3d 652 (2015) (noting that "the court need not determine whether New York or [the FAA] waiver standards govern, as the court holds that there is no material difference in the standards") *and All Metro Health Care Services, Inc. v. Edwards*, 884 N.Y.S.2d 648, 653 n.3 (2009) ("It is noted that New York law and the FAA apply different standards of wavier. Under the FAA, a wavier will not be inferred without prejudice to the opposing party as a result of the delay. New York cases do not condition a finding of waiver on prejudice to the opposing party but find a waiver based on the degree of participation." (internal citations omitted)). However, we do not need to settle this split in the present case. As discussed below, Universal has failed to demonstrate both that Plaintiff acted inconsistent with its right to compel arbitration and that

Universal was prejudiced, and therefore the trial court's denial of Plaintiff's Motion to Compel is erroneous.

Both New York and Federal law impose a strong policy favoring arbitration. *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2nd Cir. 1995). Generally, "any doubts concerning whether there has been a waiver are resolved in favor of arbitration." *Id.* at 25 (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 74 L.Ed.2d 765 (1983)). This policy has led to the decree that "waiver of arbitration is not to be lightly inferred." *Id.* at 25 (internal quotation marks and citations omitted). "Whether or not there has been a waiver is decided in the context of the case, with a healthy regard for the policy of promoting arbitration." *Id.* at 25 (citation omitted).

When reviewing whether a party has waived the right to compel arbitration, courts look to (1) "the amount of litigation (usually exchanges of pleadings and discovery)," (2) "the time elapsed from the commencement of litigation to the request for arbitration," and (3) "the proof of prejudice[.]" *Leadertex*, 67 F.3d at 25; *see also Cusimano v. Schnurr*, 26 N.Y.3d 391, 400, 44 N.E.3d 212, 218, 23 N.Y.S.3d 137, 143 (2015).

1.  Amount of Litigation

This case presents a unique legal issue. In reviewing the trial court's findings relating to the amount of litigation inconsistent with Plaintiff's arbitration rights, we

must decide whether Plaintiff's claims in its Second Amended Complaint asserted against Universal—as the transferee of fraudulent transfers—arose out of or related to the Split Funding Agreement. How we decide this issue will determine whether Plaintiff's discovery efforts relating to the claims in the Second Amended Complaint were inconsistent with its right to compel arbitration. We conclude that, based on the pleadings, Plaintiff's initial claims against Universal bore no relation to the Split Funding Agreement, and therefore we will consider only the litigation and discovery pursued by Plaintiff following, and directly related to, Universal's counterclaims.

Plaintiff's claims against Universal assert only that Universal was a recipient of certain fraudulent transfers by the other defendants. These claims are entirely independent of any claim against Universal for other conduct, including conduct related to the Split Funding Agreement. Universal filed its counterclaims against Plaintiff on 29 December 2015, alleging breach of contract, defamation, tortious interference with contract and/or prospective advantage, and unfair and deceptive trade practices, all relating to the Split Funding Agreement. Plaintiff filed its first response to Universal's counterclaims—a motion to dismiss, or, in the alternative, to stay and compel arbitration—on 24 February 2016. Plaintiff served no additional discovery requests on Universal after the counterclaims were filed. We are unpersuaded that Plaintiff's claims in its Second Amended Complaint are inextricably interwoven with Universal's counterclaims.

In January 2016, within a month after the counterclaims were filed, Plaintiff took the depositions of Kelly and Jessica. The trial court's finding that Kelly and Jessica were the "sole employees and officers" of Universal is unchallenged and binding on appeal. However, the pleadings reveal that Plaintiff sued Kelly and Jessica in their individual capacities and not as employees, officers, or agents of Universal. A close examination of the deposition transcripts also shows that Plaintiff's questions relating to Universal's counterclaims were limited, and that counsel for Plaintiff stated, prior to questioning witnesses, "iPayment is reserving all rights to argue that counterclaim 1 is subject to arbitration under its contract and as [sic] they're participating in discovery without waiving any of those rights to those arguments." Keeping in mind the strong public policy favoring arbitration, we hold that the trial court's conclusion that Plaintiff acted inconsistent with its right to compel arbitration is unsupported by its findings of fact.

2. Time Elapsed From the Commencement of the Litigation

Given the particular facts and the nature of Plaintiff's claims in this case, the relevant period of litigation prior to the request for arbitration began not with the filing of the lawsuit, but with the filing of Universal's counterclaims. Plaintiff moved to compel arbitration within two months after Universal filed its counterclaims. This two-month period falls far short of periods that other courts have deemed insufficient to establish waiver of arbitration rights. *See, e.g., Brownstone Inv. Grp., LLC v. Levey*,

514 F. Supp. 2d 536, 540 (S.D.N.Y. 2007) (holding that a "delay of more than ten months in seeking arbitration is insufficient by itself to support a finding of waiver"). Accordingly, we are unpersuaded that this amount of time would support the conclusion that Plaintiff waived its right to compel arbitration based on delay.

### 3. Prejudice

Plaintiff's limited participation in the litigation has not prejudiced Universal by allowing Plaintiff to take advantage of discovery not permitted under the rules of arbitration. The Arbitration Clause in the Split Funding Agreement limits discovery to: "twenty-five (25) interrogatories and twenty-five (25) document requests per side, and no more than two (2) depositions per side; and [] the discovery period to three (3) months . . . ." The period between Universal's filing of its counterclaims and Plaintiff's filing of its Motion to Compel was two months, well within the permissible timeframe for discovery allowed by the Arbitration Clause. Moreover, Plaintiff's depositions of Kelly and Jessica did not exceed the scope of discovery allowed by the Arbitration Clause.

We also note that Plaintiff's initial response to the counterclaims was to assert its right to compel arbitration of those claims. Beyond Plaintiff's Motion to Compel the counterclaims, Plaintiff engaged in no motion practice related to the merits of the counterclaims. *See Kramer v. Hammond*, 943 F.2d 176, 179 (2nd Cir. 1991) (holding that the defendant's substantial engagement in motion practice including a motion

for summary judgment, amounted to prejudice to the plaintiff and established waiver of the right to compel arbitration).

We hold that Universal has failed to demonstrate any prejudice caused by the limited discovery taken prior to Plaintiff's Motion to Compel. Considering the record in light of the strong public policy favoring arbitration, we conclude that Plaintiff did not waive its right to compel arbitration.

## Conclusion

For the foregoing reasons, we reverse the trial court's denial of Plaintiff's Motion to Compel Arbitration and remand this matter to the trial court to enter an order compelling arbitration of Universal's counterclaims.

REVERSED AND REMANDED.

Judges CALABRIA and DILLON concur.