ARNOLD FLOYD JOHNSON, Plaintiff
v.
CROSSROADS FORD, INC., Defendant

No. COA13-173

Filed 15 October 2013

1. **Evidence—affidavit—summary judgment—erroneously excluded —abuse of discretion**

    The trial court abused its discretion in a wrongful termination case by excluding an affidavit presented by plaintiff prior to a summary judgment hearing. The affidavit from the individual hired to replace plaintiff was timely served upon defendant, the substance of the affidavit did not contradict any previous sworn testimony of the affiant, and the contents of the affidavit were not contradictory to plaintiff's complaint.

2. **Employer and Employee—wrongful termination—correct evidentiary standard—genuine issue of material fact—summary judgment erroneous**

    The trial court erred in a wrongful termination case by granting summary judgment in favor of defendant employer. Although the trial court did not use the wrong evidentiary standard as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, plaintiff's evidence created a genuine issue of material fact as to whether plaintiff's age was the reason for his termination.

Appeal by plaintiff from order entered 21 August 2012 by Judge Howard E. Manning in Wake County Superior Court. Heard in the Court of Appeals 14 August 2013.

*Glenn, Mills, Fisher & Mahoney, P.A., by Stewart W. Fisher, for plaintiff-appellant.*

*Cranfill Sumner & Hartzog LLP, by Paul H. Derrick and Sara B. Warf, by defendant-appellee.*

*North Carolina Advocates for Justice, by Winslow Wetsch, PLLC, by Laura J. Wetsch, amicus curiae.*

McCULLOUGH, Judge.

Plaintiff Arnold Floyd Johnson appeals from the trial court's order, granting summary judgment in favor of defendant Crossroads Ford, Inc. and dismissing plaintiff's claim that he was wrongfully terminated based on his age in violation of the North Carolina Equal Employment Practices Act (section 143-422.1, *et seq.*, of the North Carolina General Statutes) with prejudice. After careful review, we reverse and remand the trial court's order.

## I. Background

On 17 February 2011, plaintiff Arnold Floyd Johnson filed a complaint against defendant Crossroads Ford, Inc., a North Carolina Corporation operating numerous car dealerships within North Carolina and Virginia, alleging wrongful termination. Specifically, plaintiff alleged he was wrongfully terminated by defendant based on his age in violation of the North Carolina Equal Employment Practices Act, section 143-422.1, *et seq.*, of the North Carolina General Statutes.

The complaint alleged the following: Plaintiff was born on 9 April 1950. In March 2000, plaintiff was hired by defendant as a salesperson. Defendant's president and principal owner Glenn Boyd ("President Boyd") stated "that he could promote [plaintiff], so [p]laintiff should let [President Boyd] know what he was interested in doing, but that this was 'a young man's business.' " During his employment, plaintiff was promoted to Finance and Insurance Manager, then Business and Development Center Manager, and then Sales Manager at Crossroads Ford of Cary ("Crossroads Ford"). In 2007, plaintiff was promoted to the position of General Manager at Crossroads Ford.

Plaintiff alleged that after he became General Manager, defendant's Vice-President Allen Boyd would repeatedly refer to plaintiff in "an age-related derogatory manner," call plaintiff "old man" up to five or six times in a single day, and say plaintiff could not hear a ringing telephone because of plaintiff's age when he did not have a hearing problem. In 2009, defendant hired Noah Woods, a thirty-five (35) year old male to

replace plaintiff as General Manager of Crossroads Ford. Plaintiff was demoted to the position of Director of Sales and Service.

Plaintiff further alleged that on 26 April 2010, a salesman named Patrick Rowe approached plaintiff and informed him that a customer was interested in purchasing a used Mustang convertible. Rowe wanted to sell plaintiff's wife's car, a Mustang convertible that had been sitting in the back lot of Crossroads Ford since April 2010. Plaintiff agreed to sell his wife's car "but told [Rowe] that they would have to work it out with Vice-President Boyd to determine Rowe's commission and how to complete the sale." The customer gave plaintiff a check for the vehicle but the vehicle was not tendered to the customer because plaintiff wanted to wait until he talked to Vice-President Boyd about the transaction. On or about 31 April 2010[1], Vice-President Boyd informed plaintiff by phone that he was terminated for stealing. Plaintiff alleged that defendant's reason for terminating plaintiff was false and pre-textual.

On 5 January 2012, defendant filed an amended answer, denying many of plaintiff's allegations. The amended answer admitted that Rowe advised customers that plaintiff was selling his wife's used vehicle that was sitting in defendant's employee parking lot based on Rowe's "understanding of corporate policy and his belief that Plaintiff had obtained authorization to sell his vehicle through the dealership[.]" Rowe heard plaintiff quote a sales price of $17,500.00 to one of the customers and "[t]hinking that the customer was going to finance the vehicle through the dealership, [Rowe] presented the customer with a credit application." Plaintiff interceded, told Rowe that the credit application was not necessary, and told the customers to write a check payable to plaintiff personally. Defendant admitted that Vice-President Boyd confirmed to plaintiff that "his employment had been terminated for taking a corporate opportunity; selling his personal vehicle at the dealership to [a] customer of the dealership on company time with no benefit to the company and without authorization."

On 11 June 2012, defendant filed a motion for summary judgment. On 18 July 2012, plaintiff gave notice of filing of several documents including numerous depositions, an affidavit of Noah Woods, and several exhibits. On 20 July 2012, defendant filed a motion to strike the affidavit of Noah Woods and also filed numerous affidavits in support of its summary judgment motion.

---

1. Plaintiff would have been sixty years old at the time of his termination.

Following a hearing held on 23 July 2012, the trial court granted defendant's motion for summary judgment and dismissed plaintiff's case with prejudice. From this order, plaintiff appeals.

## II. Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation and quotation marks omitted).

> The moving party bears the burden of establishing the lack of a triable issue of fact. If the movant meets its burden, the nonmovant is then required to produce a forecast of evidence demonstrating that the [nonmoving party] will be able to make out at least a *prima facie* case at trial. Furthermore, the evidence presented by the parties must be viewed in the light most favorable to the non-movant.

*Thompson v. First Citizens Bank & Trust Co.*, 151 N.C. App. 704, 706, 567 S.E.2d 184, 187 (2002) (internal citations and quotation marks omitted).

## III. Discussion

Plaintiff presents the following issues on appeal: (A) whether the trial court erred by disregarding the affidavit of Noah Woods and (B) whether the trial court erred by granting summary judgment in favor of defendant.

## A. Affidavit of Noah Woods

[1] Plaintiff argues that the trial court erred by disregarding the affidavit of Noah Woods and finding that it was "presented at the 11th hour," "inherently incredible," and "inconsistent" with plaintiff's complaint. We agree.

On 18 July 2012, plaintiff filed and served upon defense counsel the affidavit of Noah Woods, the thirty-five (35) year old who was hired by defendant to serve as General Manager of Crossroads Ford in 2009. Woods' affidavit provided he was hired to replace plaintiff. It also stated the following, in pertinent part:

> 8.	During the time that [plaintiff] and I worked together
> ... , I observed that Allen Boyd appeared to give [plaintiff]

a hard time and to needle him. On several occasions I heard Allen refer to [plaintiff] as "old man."

9. Allen Boyd did not use "old man" as a term of endearment.

10. Based upon my observations of the interactions between [plaintiff] and Allen Boyd, I would say that Allen Boyd knew that [plaintiff] did not like to be referred to as "old man" and that Allen Boyd could see that it was humiliating to [plaintiff.]

. . .

13. I am aware of the circumstances surrounding [plaintiff's] termination from the company.

. . .

17. As the General Manager, I was fully aware of the sale. [Plaintiff] did not try to deceive anyone or hide the fact that he was selling the car. I approved of him selling the car to the customers.

18. [Plaintiff] was willing to pay a commission from the sale to Crossroads Ford and I did not think that there was anything wrong with his selling the car to the customers.

19. [Plaintiff] was going to let Allen Boyd know about the sale and work out a cut for Crossroads Ford with Allen.

20. On Friday, April 30, 2010, Allen Boyd called me and told me he wanted me to fire [plaintiff] for selling his car.

21. Although I disagreed with Allen's decision, it was clear that Allen had already made up his mind[.]

. . .

24. I think Allen Boyd used the sale of [plaintiff's] car as a pretext to fire him. One of the principal reasons that Allen Boyd removed [plaintiff] from the position of General Manager and terminated him from his job was because of [plaintiff's] age.

On 20 July 2012, defendant filed a motion to strike the affidavit of Noah Woods. Although the trial court stated that it was not going to

strike Woods' affidavit during the 23 July 2012 hearing, in the 21 August 2012 summary judgment order, the trial court stated that

> [t]he Court finds that Woods' affidavit is *inherently incredible*, presented at the 11th hour and therefore, does not create a material issue of fact to bootstrap [plaintiff] over the motion for summary judgment. Had Woods in fact approved of the sale as he now contends, the complaint would have contained these alleged facts.
>
> . . .
>
> [Plaintiff] is simply using Woods as a "straw man" to put forth a last ditch yarn that is inconsistent with the complaint and his sworn deposition testimony. It is crystal clear that a party opposing a summary judgment motion cannot create an issue of fact by filing an affidavit that is in conflict with his prior sworn testimony. Woods' affidavit is merely a surrogate for [plaintiff's] inconsistent and newly created story that he had authority to sell the car from Woods. . . . *Cousart v. The Charlotte-Mecklenburg Hospital Authority*, 704 S.E.2d 540, 543-44 (2011); *Carter v. West Am. Ins. Co.*, 190 N.C. App. 532, and *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). Reduced to essentials, Woods' last minute affidavit is incredible, contradictory to [plaintiff's] complaint and his sworn deposition testimony and cannot be used to create an issue of fact to forestall summary judgment.

(emphasis added).

In determining whether the trial court properly disregarded Woods' affidavit, "[w]e review an order striking an affidavit for abuse of discretion." *Waterway Drive Prop. Owners' Ass'n v. Town of Cedar Point*, __ N.C. App. __, __, 737 S.E.2d 126, 135-36 (2012) (citation omitted).

First, we note that Woods' affidavit was filed and served on defense counsel on 18 July 2012, five days prior to the 23 July 2012 hearing. This was in compliance with rule 6(d) of the North Carolina Rules of Civil Procedure which states that "opposing affidavits shall be served at least two days before the hearing." N.C. Gen. Stat. § 1A-1, Rule 6(d) (2011). At the 23 July 2012 hearing, defense counsel stated that Woods' affidavit "was timely filed and served on me. I don't dispute that." Therefore, the trial court erred by finding that because Woods' affidavit was presented at the "11th hour," it was inherently incredible.

Further, all three of the cases cited by the trial court in its summary judgment order stand for the well-established proposition that "a party opposing a motion for summary judgment cannot create a genuine issue of material fact by filing an affidavit contradicting *his prior sworn testimony.*" *Cousart v. Charlotte-Mecklenburg Hosp. Auth.*, 209 N.C. App. 299, 304, 704 S.E.2d 540, 543 (2011) (citation omitted) (emphasis added); *See Carter v. West Am. Ins. Co.*, 190 N.C. App. 532, 539, 661 S.E.2d 264, 270 (2008) and *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). These cases specifically state that a party cannot survive a motion for summary judgment by merely filing an affidavit that contradicts their own personal, prior sworn testimony. In the case before us, however, the substance of Noah Woods' affidavit did not contradict any previous sworn testimony of Noah Woods. Therefore, we hold that *Cousart, Carter,* and *Barwick* are not applicable to the facts in this case and that the trial court abused its discretion in finding Woods' affidavit inherently incredible.

Next, we address whether it was improper for the trial court to find that Woods' affidavit was inherently incredible because it was "inconsistent with [plaintiff's] complaint" and "contradictory to [plaintiff's complaint.]" Viewing the evidence in the light most favorable to plaintiff, Woods' affidavit indicated that as General Manager of Crossroads Ford, Woods was aware of and approved the sale of plaintiff's wife's vehicle. The affidavit also showed that Woods believed that Vice-President Boyd used the sale of plaintiff's wife's vehicle as a pretext to terminate plaintiff. Woods believed that "[o]ne of the principal reasons [Vice President Boyd] removed [plaintiff] from the position of General Manager and terminated him from the job was because of [plaintiff's] age." The content of Woods' affidavit was not contradictory to plaintiff's complaint as the trial court's summary judgment order states. Rather, it supported plaintiff's claim that he was wrongfully terminated by defendant based on his age in violation of the North Carolina Equal Employment Practices Act. We hold that the trial court abused its discretion by disregarding Woods' affidavit based on the belief that it was inconsistent with plaintiff's complaint.

### B. Summary Judgment Order

[2] Plaintiff argues that the trial court erroneously relied on the holding in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L.Ed.2d 668 (1973), and applied an incorrect burden of proof – placing the burden upon plaintiff to disprove defendant's affirmative defense – in considering defendant's motion for summary judgment. Furthermore, plaintiff argues that the trial court erroneously granted summary judgment in

favor of defendant where plaintiff's evidence created a genuine issue of material fact as to whether plaintiff's age was the reason for his termination. We address each of these arguments in turn.

Plaintiff's complaint alleged that defendant terminated him because of his age, in violation of North Carolina public policy as set forth in the Equal Employment Practices Act ("EEPA"), N.C. Gen. Stat. § 143-422.1, *et seq.* The EEPA provides that

> [i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

N.C.G.S. § 143-422.2 (2011). "Our Supreme Court has directed that we look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases." *Youse v. Duke Energy Corp.*, 171 N.C. App. 187, 193, 614 S.E.2d 396, 401 (2005) (quotations omitted) (citing *Dept. of Correction v. Gibson*, 308 N.C. 131, 136, 301 S.E.2d 78, 82 (1983)).

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L.Ed.2d 668 (1973), Green, a black citizen of St. Louis, who had previously worked for McDonnell Douglas Corporation, an aerospace and aircraft manufacturer, as a mechanic and laboratory technician from 1956 until 28 August 1964 was "laid off in the course of a general reduction in [McDonnell Douglas Corp.'s] work force." *Id.* at 794, 36 L.Ed.2d at 673. Green was a long-time civil rights activist and during the time he was laid off, "protested vigorously that his discharge and the general hiring practices of [McDonnell Douglas Corp.] were racially motivated." *Id.* Three weeks following these activities, McDonnell Douglas Corp. publicly advertised for qualified mechanics and Green promptly applied for re-employment. *Id.* at 796, 36 L.Ed.2d at 674. McDonnell Douglas Corp. denied Green employment basing its rejection on Green's protest activities. *Id.* Thereafter, Green filed an action under Title VII of the Civil Rights Act of 1964, alleging that McDonnell Douglas Corp. had "refused to rehire him because of his race and persistent involvement in the civil rights movement[.]" *Id.*

The Supreme Court of the United States in *McDonnell Douglas* established evidentiary standards to be applied "governing the disposition of an action challenging employment discrimination[.]" *Id.* at 798,

36 L.Ed.2d at 675. First, the claimant carries the initial burden of establishing a prima facie case of discrimination. *Id.* at 802, 36 L.Ed.2d at 677. "The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* at 802, 36 L.Ed.2d at 678. If a legitimate, nondiscriminatory reason has been articulated, the claimant has the opportunity to show that the employer's stated reason for the claimant's rejection was in fact pretext. *Id.* at 804, 36 L.Ed.2d 679.

"[T]he North Carolina Supreme Court has explicitly adopted the Title VII evidentiary standards in evaluating a state claim under § 143-422.2 insofar as they do not conflict with North Carolina statutes and case law." *Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995) (citation omitted). *N.C. Dep't of Correction v. Gibson*, 308 N.C. 131, 301 S.E.2d 78 (1983), was an employment discrimination case based on race and our Supreme Court applied the *McDonnell Douglas* evidentiary standards in evaluating a claim brought under N.C. Gen. Stat. § 143-422.2. In *N.C. Dep't of Crime Control & Pub. Safety v. Greene*, 172 N.C. App. 530, 616 S.E.2d 594 (2005), our Court applied the *McDonnell Douglas* "scheme by which employees may prove [age] discrimination in employment." *Id.* at 537, 616 S.E.2d at 600. Our Court noted that "[t]he ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the [employee] remains at all times with the [employee]." *Id.* at 538, 616 S.E.2d at 600 (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 L.Ed.2d 105 (2000)). Based on the foregoing, we hold that the trial court did not err by utilizing the *McDonnell Douglas* evidentiary standards.

Next, plaintiff argues that the trial court erred by granting summary judgment in favor of defendant where plaintiff's evidence created a genuine issue of material fact as to whether plaintiff's age was the reason for his termination. We agree.

In order to establish a prima facie case of disparate treatment pursuant to N.C.G.S. § 143-422.2, plaintiff must show by a preponderance of the evidence that:

> (1) [he] is a member of a protected class; (2) [he] was qualified for [his] job and [his] job performance was satisfactory; (3) [he] was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances.

*Hughes*, 48 F.3d at 1383 (citation omitted).

To support his claim, plaintiff's forecast of evidence established that he was born on 9 April 1950, making him 60 years old at the time of his termination. Plaintiff began working for defendant in 2000 as a Salesman and quickly became one of the top salesmen for defendant. President Boyd commended plaintiff for his "good work" but then stated that this was "a young man's business." Plaintiff was promoted numerous times but after plaintiff was promoted to General Manager in 2007, Vice-President Boyd repeatedly referred to plaintiff in an age-related derogatory manner by calling him "old man," poking him with a cane, and teasing him about not being able to hear well. Plaintiff was then demoted to Director of Sales and Service in 2009 when thirty-five (35) year old Noah Woods was hired to replace him. In April 2010, a fellow salesman, Patrick Rowe, approached plaintiff about selling his wife's vehicle which had been sitting in the Crossroads Ford parking lot to a customer. Plaintiff agreed to sell his wife's vehicle but explained that he "would have to work it out with Vice-President Boyd to determine Rowe's commission and how to complete the sale." Plaintiff received a check from the customer but did not tender his wife's vehicle because he was waiting to talk to Vice-President Boyd about the transaction. Plaintiff's evidence also showed that he was terminated on 31 April 2010 by Vice-President Allen Boyd who told plaintiff that the reason behind his termination was for "stealing." Plaintiff asserted that defendant had no written policy prohibiting sales of personal vehicles to customers and that another of defendant's employees, by the name of Bob Esau, had sold his personal truck to a customer and had not been terminated. Based on the aforementioned evidence, viewed in the light most favorable to plaintiff, plaintiff was able to establish a prima facie case.

Defendant rebutted plaintiff's case by producing evidence of a legitimate, nondiscriminatory reason for plaintiff's dismissal: that plaintiff knew it was a violation of company policy to sell a personal vehicle to a company customer without the express authorization of defendant or otherwise, by stealing a corporate opportunity.

Plaintiff was able to create a genuine issue of material fact regarding whether defendant's proffered reason was pretext by showing the following through Woods' affidavit: Vice President Boyd referred to plaintiff as an "old man;" Vice President Boyd knew that plaintiff did not like to be referred to as "old man" and that it was humiliating to plaintiff; as general manager, Woods was fully aware of the sale of plaintiff's wife's vehicle and gave approval to plaintiff to sell the vehicle to the customer; plaintiff did not try to hide the transaction nor deceive anyone about the

transaction; Vice President Boyd made management decisions based on his own personal preferences which included an age-related bias; and, that Vice President Boyd used the sale of the vehicle as a pretext to terminate him.

Taking the foregoing evidence in the light most favorable to plaintiff, we hold that plaintiff has produced sufficient evidence to withstand summary judgment. Accordingly, we reverse the order of the trial court and remand this case for further proceedings.

Reversed and remanded.

Judges HUNTER, ROBERT C., and GEER concur.