IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-977

Filed: 5 May 2020

New Hanover County, No. 17 CVS 3321

ANTHONY L. REGISTER, Administrator CTA of the ESTATE OF WILLIAM CURTIS ROGERS, Plaintiff,

v.

WRIGHTSVILLE HEALTH HOLDINGS, LLC, d/b/a AZALEA HEALTH AND REHAB CENTER, and SABER HEALTHCARE HOLDINGS, LLC, Defendants.

Appeal by Defendants from order entered 13 June 2019 by Judge R. Kent Harrell in New Hanover County Superior Court. Heard in the Court of Appeals 18 March 2020.

> *Henson Fuerst, P.A., by Rachel Fuerst, Carmaletta Henson, and Shannon Gurwitch, and Hall and Green, LLP, by John F. Green and Alex Hall, for the Plaintiff.*

> *Young Moore and Henderson, P.A., by Madeleine M. Pfefferle, Dana H. Hoffman, and Angela Farag Craddock, for the Defendants.*

BROOK, Judge.

Wrightsville Health Holdings, LLC, doing business as Azalea Health and Rehab Center, and Saber Healthcare Holdings, LLC (collectively, "Defendants"), appeal from an order denying Defendants' motion to stay the proceedings and compel arbitration on 13 June 2019. Because we hold that Defendants failed to prove the

existence of a valid arbitration agreement and, in the alternative, that they waived any contractual right to arbitrate, we affirm.

## I. Factual and Procedural Background

Anthony L. Register ("Plaintiff"), administrator of the estate of William S. Rogers, initiated this suit on 28 August 2017, alleging that Defendants were negligent in their treatment and care of Mr. Rogers while he was a patient and resident at Defendants' skilled nursing facility. Plaintiff is married to Mr. Rogers's daughter, Lisa Register, who had the authority to make healthcare decisions on behalf of Mr. Rogers under a health care power of attorney. Plaintiff brought claims for medical negligence, administrative/corporate negligence, ordinary negligence, a survival action and wrongful death action, and asserted a claim for punitive damages.[1]

Defendants filed an answer to Plaintiff's complaint on 30 October 2017; their answer included a motion to compel arbitration. Plaintiff served discovery requests on Defendants, including requests for production of information and documents related to the alleged arbitration agreement. A hearing was set on the motion to compel arbitration; however, on 15 February 2018, Defendants withdrew their motion to compel arbitration. In Defendants' responses to Plaintiff's first set of

---

[1] Plaintiff's initial suit included as defendants Jeffrey D. Seder, M.D., and Brunswick Cardiology, P.C. Plaintiff voluntarily dismissed his claims against Dr. Seder and Brunswick Cardiology without prejudice on 30 April 2019.

interrogatories and requests for production, Defendants objected to questions relating to the alleged arbitration agreement, noting they had withdrawn their motion to compel arbitration.

Prior defense counsel filed a motion to withdraw as counsel on 6 March 2019, and the trial court allowed the motion the same day. Defendants then filed an amended Rule 15 motion and motion to stay the proceedings and compel arbitration on 29 May 2019; the motion included an electronic record that Defendants alleged was an arbitration agreement signed by Ms. Register when Mr. Rogers was admitted to Defendants' facility. On 4 June 2019, Plaintiff responded to Defendants' motion and included affidavits of Plaintiff and Ms. Register denying that Ms. Register signed the alleged arbitration agreement.

A hearing was held on Defendants' new motion to compel arbitration before Judge Harrell on 5 June 2019. At the hearing, Defendants objected to the affidavits as untimely because they were served on the eve of the hearing. The trial court offered Defendants a continuance to a later hearing date so that Defendants could prepare a response to the affidavits; Defendants declined the trial court's offer. The trial court accepted the affidavits.

The trial court denied Defendants' motion to compel arbitration by written order on 13 June 2019 and made the following relevant findings of fact:

> 1. That this action was commenced by the filing of the complaint by the Plaintiff on August 28, 2017.

2. That the defendants filed their answer on October 30, 2017. As part of that answer, the defendants included a motion to compel arbitration.

3. Plaintiff served discovery requests on defendants which included requests for information and documents directly related to the alleged arbitration agreement.

4. The [first] motion to compel arbitration was noticed for hearing by the defendants on January 11, 2018 to be heard February 28, 2018

5. On February 9, 2018 counsel for the defendants emailed counsel for the plaintiff and stated "We do not intend to move forward with our motion to compel arbitration . . . I think you had served some discovery with respect to the arbitration issue. Please let me know if we still need to respond to that in light of our motion withdrawal."

6. That on February 14, 2018, the defendants filed with the court a Withdrawal of Motion which stated that defendants were withdrawing their motion to compel arbitration.

7. In response to plaintiff's first set of interrogatories and request for production of documents, the defendants lodged objections to the relevancy of questions relating to the alleged arbitration agreement and noted that it had withdrawn its motion to compel arbitration.

8. Plaintiff did not seek orders to compel productions to those specific discovery requests based on the defendant having withdrawn the motion to compel arbitration.

9. Following their withdrawal of the motion to compel arbitration, the defendants took the following actions:

> a. Defendants served written interrogatories and request for production of documents on plaintiff on February 20, 2018.
>
> b. Defendants circulated their proposed revised discovery scheduling order on February 26, 2018.

c. Defendants filed a motion requesting court involvement in the preparation of the discovery scheduling order on March 27, 2018.

d. Defendants noticed the depositions of Lisa Register and Tina Glisson on May 30, 2018. In defendants [sic] deposition of Lisa Register, counsel did not address any issues relating to the purported arbitration agreement which forms the basis of this motion.

e. Defendants took part in and questioned [ten] witnesses at depositions . . . .

. . .

f. Defendants agreed to terms of a consent order compelling it to respond to certain discovery requests of the plaintiff on December 3, 2018.

10. On March 6, 2019, counsel for the defendants filed a motion to withdraw due to issues that had arisen in their representation of the defendants. Counsel informed the court that Dana Hoffman (present counsel) had been retained, had been provided all discovery and was prepared to take over representation. In statements to the court, counsel indicated that "[h]er involvement will not change anything in terms of discovery scheduling order, the trial date, would not prejudice the administration of this case in any way. We're not asking for any modification to DSO [Discovery Scheduling Order], any attempt to move the trial date, so I don't think it's in any way prejudicial to the plaintiffs in this case."

11. Following the appearance of Ms. Hoffman as counsel for the defendants, interrogatories and requests for production of documents were sent by defendants to Dr. Jeffrey Seder and Brunswick Cardiology . . . on April 4, 2019.

12. Defendants then forwarded their second set of interrogatories and request for production of documents to the plaintiff on April 5, 2019.

13. On April 29, 2019 defendants filed a motion for protective order to quash the 30(b)(6) Notice of Deposition served by plaintiff on Defendant Saber Healthcare Holdings, LLC and noticed the same for hearing.

14. On May 8, 2019 in a hearing before the Honorable Paul Quinn on plaintiff's motion to compel, defendants admitted to violation of the prior order of the Court on December 3, 2018 compeling [sic] production of certain discovery. An order from that hearing addressing sanctions is still outstanding.

15. The defendants were also ordered by Judge Quinn in a written order entered May 13, 2019 to compel production of information which defendants had failed to provide in response to other discovery requests. . . .

16. In support of their motion to compel arbitration, defendants produced a copy of an electronic record which purports to be an Arbitration Agreement signed at the time of the decedent's admission to the defendant's facility. The agreement purports to bear the signature of Lisa Register who was the health care power of attorney for the decedent.

17. Lisa Register and plaintiff in this action have filed affidavits in opposition to the motion to compel arbitration which deny that the signature shown on the electronic record is the signature of Lisa Register.

18. Defendants have failed or refused to provide information about the employee who purportedly signed the arbitration agreement on behalf of defendants. Plaintiff has been unable to complete discovery on issues relating to the arbitration agreement and reasonably relied on the defendants [sic] withdrawal of the motion and defendants [sic] statements that they would not move forward with the motion in not pursuing a motion to compel production of the information objected to in discovery requests.

19. As part of their preparation for litigation, counsel for the plaintiff retained a medical records expert who has reviewed the audit history for electronic records provided by defendants. The purported arbitration agreement was not provided in discovery and plaintiff was not able to have their expert review the audit trail for this document.

20. Plaintiffs have incurred $75,000.00 in litigation expenses including retention of expert witnesses and costs of discovery. Those expenses would not have been incurred if defendants had pursued its motion to compel arbitration at the earlier stage of this proceeding.

21. Counsel for the plaintiff is not paid hourly but have expended substantial time in preparation for and completion of numerous depositions, court hearings including motions to compel production of discovery responses, and completion of discovery responses.

. . .

25. More than 15 months elapsed after defendants withdrew the motion to compel arbitration before attempting to resurrect this issue.

The trial court then entered the following conclusions of law:

2. At an early stage of the litigation, defendants notified plaintiff of its intent to enforce a purported arbitration agreement but rather than simply removing the motion from a hearing calendar, the defendant withdrew the motion entirely.

. . .

5. Defendants have failed to carry their burden of establishing the validity of an enforceable arbitration agreement.

6. Even if the arbitration agreement were valid, withdrawing the motion to compel arbitration, indicating to the plaintiff that the motion would not be pursued,

objecting to discovery responses from the plaintiff on the basis that the motion had been withdrawn and express assertions to the court that no impact on the course of litigation would be caused by withdrawal of counsel constitute actions inconsistent with arbitration.

7. That defendants [sic] actions have resulted in prejudice to the plaintiff in the expense of over $75,000.00 in costs incurred in pursuit of claims, completion of a large number of depositions that would have otherwise been unavailable in arbitration, and hundreds of hours of attorney time incurred in conducting hearings to compel defendants to respond to discovery and to seek sanctions for defendants [sic] failure to comply with [a] court order to compel that production.

. . .

9. The length of delay in asserting the right to arbitrate has been a factor considered in determining if waiver has occurred. Elliott v. KB Home N.C., Inc., 231 N.C. App. 332, 337, 752 S.E.2d 694, 698 (2013)[.]

10. When a party has allowed significant time to pass, participated in litigation involving judicial intervention and participation, and thereby caused the expenditure of significant expense, including attorneys' fees, the strong public policy in favor of arbitration is thereby diminished because the primary benefit of arbitration, namely expedited hearing of issues at a reduced cost to the parties, has been lost. Elliott v. KB Home N.C., Inc., 231 N.C. App. 332, 338, 752 S.E.2d 694, 698 (2013)[.]

11. Defendants cannot engage in protracted litigation and then assert a right to arbitrate when the course of that litigation has not been favorable to them, particularly where they are subject to contempt and sanction orders from the court for their failure to comply with prior court orders.

Concluding that Defendants had failed to meet their burden to establish the existence of a valid arbitration agreement, and in the alternative that Defendants had waived any right to compel arbitration, the trial court denied Defendants' motion to compel arbitration on 13 June 2019. Defendants filed notice of appeal on 20 June 2019.

## II. Jurisdiction

An appeal to this Court is proper from an order denying a motion to compel arbitration. N.C. Gen. Stat. § 1-569.28 (2019).

## III. Analysis

Defendants allege that the trial court erred in finding that Defendants failed to establish a valid and enforceable arbitration agreement and in finding that Defendants waived any right to compel arbitration. We disagree and affirm the order of the trial court.

### A. Existence of Valid Agreement

#### i. Standard of Review

"The trial court's findings regarding the existence of an arbitration agreement are conclusive on appeal where supported by competent evidence, even where the evidence might have supported findings to the contrary." *Sciolino v. TD Waterhouse Investor Servs.*, 149 N.C. App. 642, 645, 562 S.E.2d 64, 66 (2002). "Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding." *Eley v. Mid/East Acceptance Corp. of N.C., Inc.*, 171 N.C. App. 368, 369,

614 S.E.2d 555, 558 (2005) (internal marks and citation omitted). "Accordingly, upon appellate review, we must determine whether there is evidence in the record supporting the trial court's findings of fact and if so, whether these findings of fact in turn support the conclusion that there was no agreement to arbitrate." *Sciolino*, 149 N.C. App. at 645, 562 S.E.2d at 66.

### ii. Merits

Defendant, as the party seeking to compel arbitration, bears the burden of showing that a valid arbitration agreement exists. *Routh v. Snap-On Tools Corp.*, 108 N.C. App. 268, 271-72, 423 S.E.2d 791, 794 (1992). "The law of contracts governs the issue of whether an agreement to arbitrate exists." *Brown v. Centex Homes*, 171 N.C. App. 741, 744, 615 S.E.2d 86, 88 (2005). In North Carolina, "a valid contract requires (1) assent; (2) mutuality of obligation; and (3) definite terms." *Charlotte Motor Speedway, LLC v. County of Cabarrus*, 230 N.C. App. 1, 7, 748 S.E.2d 171, 176 (2013). Arbitration will not be compelled in the absence of such a showing. *Routh*, 108 N.C. App. at 271, 423 S.E.2d at 794.

Defendants first argue that the trial court's finding that they failed to meet their burden was unsupported by competent evidence. Chiefly, they contend, "Ms. Register's act of signing the Arbitration Agreement is sufficient to establish that the agreement is a valid agreement to arbitrate and Plaintiff is bound by the obligation to do so." However, Plaintiff contests whether Ms. Register actually signed the

agreement, not whether the agreement would have been valid had she done so. As explained below, because competent evidence supports a finding that Defendants failed to establish assent—an essential element of a valid contract—we affirm the trial court's finding that Defendants did not show that a valid arbitration agreement exists, and thus we affirm its order denying Defendants' motion to compel arbitration.

Defendant concedes that the trial court admitted the affidavits of Plaintiff and Ms. Register in a proper exercise of its discretion under North Carolina Rules of Civil Procedure, Rule 6(d). N.C. Gen. Stat. § 1A-1, Rule 6(d) (2019) (granting trial courts the discretion to accept affidavits in support or opposition of motions even when not served upon opposing counsel two days in advance of hearing). Once admitted, affidavits disputing a fact material to Defendant's burden—here, whether Ms. Register assented to the contract—are competent evidence to support a trial court's conclusion that a defendant has not met its burden, even though "the evidence might have supported findings to the contrary." *Sciolino*, 149 N.C. App. at 645, 562 S.E.2d at 66. Further, Defendants did not produce any witnesses or affidavits attesting that Ms. Register did in fact read and sign the arbitration agreement. The trial court was therefore entitled to determine the credibility of the affidavits and to rely on them, as well as to consider the lack of rebuttal evidence from Defendants beyond the purported instrument, to come to the conclusion it did.

Defendants contend, however, that the affidavits were "inherently incredible" such that they did not constitute "competent evidence." Specifically, and relying on *In re Foreclosure of Real Prop. Under Deed of Trust from Brown*, 156 N.C. App. 477, 577 S.E.2d 398 (2003), Defendants argue that parties should be apprised of the contents of affidavits submitted by their opponents and allowed to object. In that case, this Court listed several potential ways in which a party could be prejudiced by the admission into evidence of untimely affidavits. *Id.* at 485, 577 S.E.2d at 403-04. But it then upheld the trial court's admission of affidavits because it appeared the appellants had not been so prejudiced—that is, they had been made aware of the affidavits' contents and had the opportunity to challenge them. *Id.*, 577 S.E.2d at 404. It is therefore not enough, as Defendants suggest, that there *may* be abstract "concerns about the ability the [sic] of opposing party's ability to effectively refute new allegations and the inherent credibility of untimely affidavits."

As Plaintiff notes, the trial court offered Defendants more time to respond to the untimely affidavits pursuant to the discretion Rule 6(d) affords. Once Defendants declined that offer, the trial court in its discretion refused to grant Defendants' motion to strike the affidavits. In a nearly identical case—one that also concerned the enforcement of an alleged arbitration agreement by an assisted living facility in the wake of an alleged wrongful death—we held that although it was "undisputed that plaintiff failed to serve her opposing affidavit on defendants within two days

prior to the trial court's hearing[,] . . . [t]he trial court did not abuse its discretion when it '[took] such other action as the ends of justice require' and proceeded with the hearing." *Raper v. Oliver House, LLC*, 180 N.C. App. 414, 418, 637 S.E.2d 551, 554 (2006) (quoting N.C. Gen. Stat. § 1A-1, Rule 6(d)).

Defendants also point to *Johnson v. Crossroads Ford, Inc.*, 230 N.C. App. 103, 108-09, 749 S.E.2d 102, 106-07 (2013), where this Court reversed a trial court's decision to strike an affidavit offered five days before a hearing. Even putting aside the trial court's offer here to Defendants to continue the hearing to ensure that Defendants had a chance to fully consider and respond to the affidavits, this Court's previous holding that a trial court was wrong to exclude affidavits that were timely served would not require us to now find that a trial court committed reversible error by *including* affidavits entered with less notice. *See id.* at 108, 749 S.E.2d at 106 ("[T]he trial court erred by finding that because Woods' affidavit was presented at the '11th hour,' it was inherently incredible."). We therefore do not agree with Defendants that "this Court has previously determined that affidavits are inherently incredible when served at the eleventh hour to raise entirely new contentions of which defendants had never been made aware."

Defendants further argue that the trial court erred in failing to make affirmative findings that the affidavits are true or that the signature on the alleged arbitration agreement is not that of Ms. Register. North Carolina law requires that

the trial court determine whether a valid arbitration agreement exists as a matter of law. N.C. Gen. Stat. § 1-569.6(b) (2019). We have also required that "the trial court [] state the basis for its decision in denying a defendant's motion to stay proceedings in order for this Court to properly review whether or not the trial court correctly denied the defendant's motion [to compel arbitration]." *Steffes v. DeLapp*, 177 N.C. App. 802, 804, 629 S.E.2d 892, 894 (2006).

The trial court has done so here. It concluded as a matter of law that "Defendants have failed to carry their burden of establishing the validity of an enforceable arbitration agreement." It made findings of fact acknowledging both the contents of the affidavits and Defendants' failure to produce either the purported agreement or the employee who allegedly signed the agreement on Azalea's behalf until 29 May 2019, approximately a year and a half after the initiation of the suit. The trial court thereby stated adequate bases for its decision. Because the trial court adequately supported its finding, an affirmative finding that the affidavits were in fact truthful is not required to support the conclusion that Defendants' burden remains unmet. *See Evangelistic Outreach Ctr. v. Gen. Steel Corp.*, 181 N.C. App. 723, 728, 640 S.E.2d 840, 844 (2007) (holding that "competent evidence supported the trial court's finding that there was no agreement to arbitrate" without the trial court's accepting a party's denial as a fact per se).

Finally, Defendants argue that state and national public policies in favor of arbitration must lead to a conclusion that the trial court erred in denying their motion to compel arbitration. But public policy favoring the enforcement of arbitration agreements and broad constructions of their scope depends on a predicate finding that there exists an arbitration agreement to be enforced and construed. *See Sears Roebuck v. Avery*, 163 N.C. App. 207, 211, 593 S.E.2d 424, 428 (2004) ("[T]his public policy does not come into play unless a court first finds that the parties entered into an enforceable agreement to arbitrate."). Defendants' lengthy appeals to public policy therefore put the cart before the horse. Policy plays no part in the trial court's otherwise routine determination of whether there is a valid contract at all.

We therefore hold the trial court correctly concluded that Defendants failed to meet their burden of proving the existence of a valid arbitration agreement.

## B. Waiver of Right to Compel Arbitration

Defendants further contend that the trial court erred in concluding, in the alternative, that Defendants waived any right to compel arbitration. We conclude that the trial court did not so err, and we affirm its order.

### i. Standard of Review

Whether a party has engaged in conduct that constitutes waiver of its contractual right to arbitration is a question of fact. *Cyclone Roofing Co. v. David M. LaFave Co.*, 312 N.C. 224, 229, 321 S.E.2d 872, 876 (1984). "[T]he trial court's

findings of fact are binding on appeal when supported by competent evidence." *Herbert v. Marcaccio*, 213 N.C. App. 563, 567, 713 S.E.2d 531, 535 (2011). We apply a "general presumption of correctness [] to a trial court's findings of fact to its waiver determinations." *Elliott v. KB Home N.C., Inc.*, 231 N.C. App. 332, 337, 752 S.E.2d 694, 698 (2013). "[T]he question of whether those actions, once found as fact by the trial court, amount to waiver of the right to arbitrate a dispute is a question of law subject to *de novo* review." *IPayment, Inc. v. Grainger*, 257 N.C. App. 307, 315, 808 S.E.2d 796, 802 (2017).

## ii. Merits

Public policy favors arbitration because it represents "an expedited, efficient, relatively uncomplicated, alternative means of dispute resolution, with limited judicial intervention or participation, and without the primary expense of litigation—attorneys' fees." *Nucor Corp. v. Gen. Bearing Corp.*, 333 N.C. 148, 154, 423 S.E.2d 747, 750 (1992). "Because of the strong public policy in North Carolina favoring arbitration, courts must closely scrutinize any allegation of waiver of such a favored right." *Cyclone*, 312 N.C. at 229, 321 S.E.2d at 876 (internal citation omitted). "[A] party has impliedly waived its contractual right to arbitration if by its delay or by actions it takes which are inconsistent with arbitration, another party to the contract is prejudiced by the order compelling arbitration." *Id.* "[T]he party opposing

arbitration bears the burden of proving prejudice." *HCW Ret. & Fin. Servs. v. HCW Emp. Ben. Servs.*, 367 N.C. 104, 109, 747 S.E.2d 236, 240 (2013).

Our courts have found parties to have taken actions inconsistent with a right to arbitrate when they participate in lengthy litigation while doing "nothing to assert any right to arbitrate." *Elliott*, 231 N.C. App. at 342, 752 S.E.2d at 700 (involving a three-year period of litigation absent any assertion of a right to arbitrate).

And our courts have indicated that there are several ways in which a party can show prejudice. These include a "delay in the seeking of arbitration" resulting in a party's "expend[ing] significant amounts of money" in litigation. *Cyclone*, 312 N.C. at 229-30, 321 S.E.2d at 877. The reason is clear enough: "when a party has allowed significant time to pass, participated in litigation involving judicial intervention and participation, and thereby caused the expenditure of significant expense, including attorneys' fees, the strong public policy in favor of arbitration is thereby diminished." *Elliott*, 231 N.C. App. at 338, 752 S.E.2d at 698.

We consider below whether Defendants' actions were inconsistent with a claimed right to arbitration and whether Plaintiff was prejudiced by those actions. Deciding both of these issues in the affirmative, we conclude that Defendants waived any right to arbitrate they may have had.

Here, Defendants filed a withdrawal of their motion to compel arbitration. They also sent an email to Plaintiff's counsel stating, "[w]e do not intend to move

forward with our motion to compel arbitration." Further, they objected to Plaintiff's requests for admission regarding the alleged agreement to arbitrate. These actions go beyond merely doing "nothing to assert any right to arbitrate" that our Court found sufficient to waive a right to arbitrate in *Elliott* and are entirely "inconsistent with [a] right to arbitration." *Id.* at 342, 752 S.E.2d at 700.

Having concluded that Defendants took actions "inconsistent with arbitration," we turn to whether Plaintiff was prejudiced by Defendants' actions. *Cyclone*, 312 N.C. at 229, 321 S.E.2d at 876. Plaintiff asserts that Defendants' delay in reasserting an alleged right to arbitrate prejudiced Plaintiff because Plaintiff was forced to expend significant amounts in litigation. As explained below, we agree.

First, the delay at issue here was consequential. While our Supreme Court found a one-month delay, in which no discovery was conducted and no evidence was lost, did not support a conclusion of prejudice, *id.* at 233, 321 S.E.2d at 878, our Court in *Herbert* concluded that litigation over a two-year period was significant and contributed to our conclusion that there was prejudice to the non-moving party, 213 N.C. App. at 569, 713 S.E.2d at 536. The delay here in asserting a right to arbitrate—after renouncing the same—is substantial, and, as such, bears more in common with *Herbert* than *Cyclone*. Specifically, competent evidence supports the trial court's finding that "[m]ore than 15 months elapsed after [D]efendants withdrew the motion to compel arbitration before attempting to resurrect this issue." This finding in turn

supports the trial court's conclusion that Defendants waived their alleged right to arbitrate this dispute.

> When considering whether a delay in requesting arbitration resulted in significant expense for the party opposing arbitration, the trial court must make findings (1) whether the expenses occurred after the right to arbitration accrued, and (2) whether the expenses could have been avoided through an earlier demand for arbitration.

*Elliott*, 231 N.C. App. at 343, 752 S.E.2d at 701. Because the party opposing arbitration bears the burden of proving prejudice, the non-moving party must present to the trial court actual evidence of the expenses incurred as a result of the moving party's failure to timely assert a right to arbitration. *See Herbert*, 213 N.C. App. at 569, 713 S.E.2d at 536 (affirming trial court's finding of significant expense where trial court relied on attorney affidavit and superior court record evidence that the litigation required "significant resources," although trial court did not find any "specific dollar amounts" of the expense). Our Court has considered fees and other litigation expenses as low as $10,000 to be prejudicial. *Prime South Homes, Inc. v. Byrd*, 102 N.C. App. 255, 261, 401 S.E.2d 822, 826-27 (1991); *see also Elliott*, 231 N.C. App. at 343, 752 S.E.2d at 701 (concluding $100,000 in legal fees to be prejudicial); *Moose v. Versailles Condo. Ass'n*, 171 N.C. App. 377, 385, 614 S.E.2d 418, 424 (2005) (affirming trial court's finding that $32,854 showed prejudice).

Here, the record supports the trial court's findings that the delay caused Plaintiff to incur expenses and, thus, the court's conclusion regarding waiver. Plaintiff's counsel submitted a sworn affidavit averring that counsel expended approximately $75,000 in litigation, and that "[a]lmost half of the money has been spent o[n] preparation and taking depositions, travel, and preparation for and travel to multiple Court hearings." Counsel further averred that Plaintiff would not have hired seven different expert witnesses, participated in four superior court hearings, reserved over a dozen witnesses to appear for a peremptory trial setting on 9 December 2019, taken 12 depositions, or participated in mediation had Defendants not withdrawn their motion to compel arbitration. The trial court assessed this record evidence as credible and found that Plaintiff incurred significant litigation expenses that would not have accrued had Defendants not withdrawn the motion. The trial court further concluded as a matter of law that Plaintiff was prejudiced by expending

> $75,000.00 in costs [] in pursuit of claims, completion of a large number of depositions that would have otherwise been unavailable in arbitration, and hundreds of hours of attorney time incurred in conducting hearings to compel defendants to respond to discovery and to seek sanctions for defendants [sic] failure to comply with [a] court order to compel that production.

We therefore conclude that competent evidence supports the trial court's findings. These findings, in turn, support the court's conclusion that the Defendants' delay caused Plaintiff to suffer significant expense.

Competent evidence supports the trial court's findings that Defendants acted inconsistent with any claimed right to arbitrate. Competent evidence also supports the court's findings that these actions were to Plaintiff's detriment. These findings support the trial court's conclusion of a waiver of any purported right to arbitrate. "Holding otherwise would defeat, rather than promote, the public policy behind the favor with which the courts of this state generally view arbitration—expediting an efficient and relatively simple means of resolving disputes without the multitude of costs, in both time and money, generally associated with litigation." *Elliott*, 231 N.C. App. at 347, 752 S.E.2d at 703.

## IV. Conclusion

We conclude that the trial court did not err in concluding that Defendants failed to prove the existence of a valid arbitration agreement. We further conclude that the trial court did not err in finding that, even if there was a valid arbitration agreement, Defendants waived any right to arbitrate. We therefore affirm the order below denying Defendants' second motion to compel arbitration and stay the proceedings.

AFFIRMED.

Judges DILLON and COLLINS concur.